**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------

R.F., by his parents, H.F. and C.F.,

                        Plaintiffs-Appellants,                1:24-CV-03117 (    )

        - against -                           **COMPLAINT**

New York City Department of Education,

                        Defendant-Appellee.

----------------------------------------------------------------

Plaintiffs, by their attorneys, Mayerson & Associates, as and for their Complaint, allege and state the following:

1.    Plaintiff R.F. is a (now) ten-year-old male child classified as having an eligible developmental disability – autism.

2.    Plaintiffs C.F. and H.F. are R.F.'s parents.

3.    R.F. was at all relevant times, and still is, a student within the New York City Department of Education's purview, entitled to all rights, entitlements, and procedural safeguards mandated by applicable law, statutes and consent orders including, but not limited to, the Individuals with Disabilities Education Improvement Act (hereinafter "IDEIA"), 20 U.S.C. § 1400 *et. seq.*, the pertinent implementing regulations promulgated under the Code of Federal Regulations, Article 89 of the New York State Education Law, and Part 200 of the Commissioner's Regulations.

4.    Plaintiffs are residents of the State of New York, residing at all relevant times at an address within the New York City Department of Education's purview and currently residing at an address within the Southern District of New York, in the Borough of Manhattan.

5. Although well known to defendant, plaintiffs are not expressly named and identified herein by their given names or specific residential address because of the privacy guarantees provided in the IDEIA statute, as well as in the Family Educational Rights Privacy Act, 20 U.S.C. § 1232(g), and 34 C.F.R. § 99.

6. Defendant, the New York City Department of Education ("the DOE"), is a "local educational agency" and school district organized under the laws of the State of New York. Both procedurally and substantively, defendant was and still is statutorily obligated under the IDEIA, as well as the laws of the State of New York, to consider the "full continuum" to provide R.F. with a "free appropriate public education" ("FAPE").

7. The "full continuum" includes programming and services available in a school setting, as well as in the student's home and surrounding community.

8. This action presents a limited IDEA-based appeal seeking (a) declaratory, clarification and partial reversal relief from a portion pf the State Review Officer's (SRO's) March 25, 2024 Decision and (b) statutory attorneys' fees and costs that plaintiffs should be awarded as the "prevailing party."

9. Plaintiffs do not take any appeal from the SRO's Decision to the extent that such Decision did nothing to disturb the Impartial Hearing Officer's (IHO) award of tuition reimbursement for R.F.'s attendance at the not-for-profit Titus School.  Plaintiffs' appeal in this action is limited to the relief *refused* by the IHO and the SRO; to wit, the IHO's and SRO's refusal to fund any of R.F.'s supplemental home and community-based services.

10. Pursuant to 20 U.S.C. § 1415(i)(2)(A), 28 U.S.C. §1331 and §1367, this Court has jurisdiction of this action without regard to the amount in controversy.

11.    Venue is proper in that plaintiffs and defendant all reside or are situated within this judicial district.

## I.    Summary of the Factual and Procedural Background

### A.    R.F. is on the Severe End of the Autism Spectrum

12.    R.F. is (now) a ten-year-old boy diagnosed with autism and a PTEN Genetic Mutation. (P-Y at 1).[1]    While autism is considered a "spectrum" disorder, R.F. presents with pronounced, pervasive and *severe* deficits across the board (*See,* P-D at 49) including academics/pre-academics (P-U), communication (P-V, P-Q), toileting (P-E, P-S, P-X), attention (P-V; P-W; P-Y; P-U), behaviors (P-D; P-D at 48; P-O; P-Y at 11;), sensory processing (P-S; P-X; P-U), social/emotional (P-D at 45; P-W; P-X; P-Y), gross motor (P-D at 49; P-X; T. ), fine motor skills (P-S, P-X), oral motor planning skills (P-T.), strength and endurance (P-E; P-S), visual motor skills (P-E, P-S, P-X,), and ADL/self-help skills (P-E, P-S, P-V, P-X, P-Y), among others. R.F.'s behaviors significantly interfere with his availability for learning (P-D, at 57-9).   These interfering behaviors include stereotypy wherein R.F. will engage in non-contextual vocalizations, task refusal, property destruction, and self-injurious behaviors, among others. (P-U; Tr. 136:19 –Tr. 137:7).

13.    Plaintiff's documentation establishes that, even by autism standards, R.F. is severely impaired. (*See* e.g. P-D at 48-60).   R.F.'s severity and significant needs were not disputed by the defendant, IHO, or SRO.   A compelling record shows that, in light of R.F.'s severity, it takes intensive one-to-one teaching and behavioral support and a great deal of practice and repetition to get R.F. to make appreciable progress, indeed just to get R.F. to be "available" to learn.

---

[1] Citations listed as P-____ refer to plaintiffs' exhibits at the underlying impartial hearing.  Citations listed as D-____ refer to defendant's exhibits at the underlying impartial hearing.  Citations listed as T. ___ refer to portions of the transcript from the underlying impartial hearing.  Subject to this Court's directives to the contrary, the entire underlying record presently with the SRO will be retrieved and filed with this Court.

B.      **Plaintiffs' 2023-2024 Due Process Filing**

14. The FAPE required under IDEA necessarily will be different for each child, as IDEIA expressly rejects any "one size fits all" approach or restrictions that preclude the genuine individualization of a student's educational program.  As the Second Circuit recognized in *T.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145 (2d Cir. 2014), a school district must consider the "full continuum" when assessing a child's unique needs. *See also, L.K. v. N.Y.C. Dep't of Educ.*, 674 Fed. Appx. 100 (2d Cir. 2017).

15. The underlying administrative "due process" proceeding was brought by plaintiffs pursuant to the IDEIA to secure pendency, declaratory, and reimbursement relief pertaining to R.F.'s program at the not-for-profit Titus School ("Titus"), funding for R.F.'s supplemental home and community-based related services, and funding for an updated Neuropsychological Evaluation upon proper notice duly given by plaintiffs pursuant to the requirements of the IDEIA.

16. Plaintiffs filed a demand for due process on or about June 30, 2023, and amended their demand on or about August 22, 2023.  Michele Babbitt, Esq. an attorney who previously had been employed by the DOE for years, was assigned as the "Impartial Hearing Officer" ("IHO").

17. Pursuant to Section 4401 of the New York Education Law, the Prong I evidentiary burden was on the DOE to establish that it had offered R.F. a FAPE.

18. On or about August 2, 2023, IHO Babbitt issued a "Pre-Hearing Order" requiring, among other things, that the parties disclose their intent to cross examine the opposing party's witnesses two days before the hearing. (IHO Ex. 1). The IHO also ordered the defendant to disclose whether or not it intended to present a Prong I case and to file its Due Process Response by August 16, 2023. (*Id.*)

19. On August 4, 2023, the DOE served plaintiffs with a Subpoena for Documents relating to R.F.'s attendance at Titus. On or about August 8, 2023, IHO Babbitt issued a signed, modified subpoena for plaintiffs to comply with. On or about August 14, 2023, plaintiff's counsel shared the subpoenaed documents with defendant's counsel in compliance with the IHO's August 14, 2023 order.

20. On or about September 13, 2023, defendant consented to a Pendency Order, discussed further below, that, pursuant to 20 U.S.C. §1415(j), continues to protect R.F.'s pendency entitlements until such time as there is a final order.

21. The parties requested an adjournment in an effort to try to resolve the matter amicably without the need for a hearing.

22. Despite plaintiffs' request, however, defendant never made a written offer of settlement in any amount prior to hearing. Plaintiffs were left with no choice but to litigate the entire case to adjudication.

**C.   Defendant Conceded The Core Prong I FAPE Deprivation**

23. The Supreme Court has established a three-part test, referred to as the Burlington/Carter test, to determine whether a special education student is entitled to reimbursement or other funding for placement in a private program, as follows: (1) whether the school district offered the child a free appropriate public education ("FAPE") under the terms of the IDEIA ("Prong I"); (2) whether the private educational programming chosen by the parents was an appropriate and "reasonably calculated" placement under the IDEIA ("Prong II"); and (3) whether a balancing of equitable considerations favors reimbursement ("Prong  III"). *See Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 114 S. Ct. 361, 126 L. Ed. 2d 284 (1993); *Sch. Comm. of Town of Burlington v. Dep't of Educ.*, 471 U.S. 359, 105 S. Ct. 1996, 85 L. Ed. 2d 385 (1985); *C.F. v.*

*N.Y.C. Dep't of Educ.*, 746 F.3d 68 (2d Cir. 2014); *P.K. ex al. v. N.Y.C. Dep't of Educ.*, 526 Fed. Appx. 135 (2d Cir. 2013) (Summary Order); *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167 (2d Cir. 2012) cert. denied, 2013 U.S. LEXIS 4528 (U.S. June 10, 2013). *See also, L.K.*, 674 Fed. Appx. 100.

24. The hearing in the case at bar took place on October 13, 2023.  At the hearing, the DOE *conceded* that it had failed to provide R.F. a FAPE, thereby conceding Prong I of the three-prong test. (Tr. 26). The DOE also conceded that there were no Prong III equitable considerations weighing against full reimbursement. (Tr. 35).

25. The DOE called no witnesses and submitted no documentary evidence for the hearing. Moreover, the DOE failed to notify plaintiffs' counsel of its intent to cross examine any of their witnesses. Despite this failure, the IHO allowed the DOE to ask cross examination questions limited to the scope of the IHO's own "clarifying questions."

26.  At the hearing, five witnesses testified as to R.F.'s severe needs and the appropriateness of his Titus program, the appropriateness of his supplemental home and community-based services and supports, and why the equities favored R.F. and his parents. Plaintiffs also presented numerous exhibits and compelling sworn affidavit testimony from R.F.'s mother, school representative, Speech Language Therapy ("SLT") provider, Occupational Therapy ("OT") provider, and ABA provider.[2]

27. A vast majority of the hearing was dedicated to the IHO's "clarifying questions" regarding the need and value of R.F.'s after school services.

---

[2] Stephanie Koh is a BCBA/LBA and is the Founder and Director of Little Green Tugboat, where R.F. received ABA therapy. Ex. P-V. Her license can be found at Parents' Exhibit P-P. Kaitlyn Simon was R.F.'s Speech Language Pathologist at Happy Talk SLT. Her license and resume can be found at Parents' Exhibit P-R. Jessica Zambito was R.F.'s occupational therapist and was the clinical director and owner of Bloom OT and Spring Ahead OT. Ex. P-X. Her license can be found at Parents' Exhibit P-T.

28. Plaintiffs urge that the IHO's questions, when considered in context, and particularly given the DOE's stipulation that there were no Prong III equity defenses to consider (Tr. 35), were inappropriate and displayed a bias, partiality and an impermissible predetermination.

29. The IHO was not interested in clarifying the record, but rather in making a record in taking up the role and responsibility of the DOE's counsel, asking loaded and confusing questions which were for the purposes of (1) attacking Parent's Prong II position that Titus was an appropriate placement and (2) creating Prong III equity issues where none existed, as conceded by the DOE.

30. For example, at the hearing Ms. Kaitlyn Simon (R.F.'s SLT provider) made herself available to answer the IHO's "clarifying questions." However, the IHO's beliefs about R.F.'s after school services were first revealed during what became an interrogation of Ms. Simon, wherein the IHO asked, "So isn't the one hour of speech and language therapy that you provide to the student -- isn't that to maximize his speech and language?" (Tr. 64:16-19). Plaintiffs contend that the IHO's question was improperly framed. While the IHO was clearly attempting to establish that the purpose of the additional one hour of SLT was to maximize R.F.'s potential as a student, the IHO's query about "maximizing his speech and language" was vague and confusing. If the IHO's question was truly to clarify the record, it would have been framed in such a way as to inquire about R.F.'s need for afterschool SLT, instead of a pointed question that only sought to confirm the IHO's belief regarding R.F's afterschool services.

31. At the conclusion of the hearing, the IHO confirmed the DOE's Prong I and Prong III concessions (Tr. 204-05) and ordered the parties to submit Post Hearing Briefs by November 28, 2023 (Tr. 207) only discussing the Prong II appropriateness of R.F.'s unilateral program. (Tr. 205). Accordingly, the only properly remaining question before the IHO was whether R.F.'s

unilateral, Prong II educational program was appropriate and "reasonably calculated" to provide R.F. with "meaningful educational benefit."

32. After the trial concluded, plaintiffs submitted their post-hearing memoranda on November 28, 2023. Defendant submitted their post hearing memoranda at the request of the IHO on November 29, 2023, after the close of business.

#### D.  The IHO's Decision

33. The IHO issued her Findings of Fact and Decision on December 8, 2023. Therein, the IHO found that the DOE had conceded that it failed to offer R.F. a FAPE for the 2023-2024 school year; that Titus was an appropriate placement for R.F.; and that there were no equitable considerations against awarding R.F.'s parents full tuition reimbursement for R.F.'s attendance at Titus. However, the IHO denied *any* relief relating to R.F.'s after school ABA services (including ABA therapy, parent training, supervision, ABA team meetings, and interdisciplinary meetings), SLT, and OT services. In doing so, the IHO ruled that plaintiffs had failed to meet their burden concerning the relief requested for R.F.'s after-school SLT, OT, and ABA services. The IHO did not, however, identify the "burden" she was relying on in making this determination. This fact is crucial, as the IHO denied R.F.'s home programing relief as she found the programing was for the "maximization" and "generalization" of skills. Such arguments of maximization and generalization are ostensibly Prong III considerations,[3] which the DOE conceded, and an issue that the IHO had ordered the parties not to focus on in their post hearing briefs.

34. In the case at bar, the IHO: (a) failed to properly apply the controlling Prong II standards; (b) failed to meaningfully address, reconcile, and grapple with a compelling evidentiary record

---

[3] *See  Application of Student with a Disability,* Appeal No. 23-237, *Application of a Student with a Disability*, Appeal No. 23-134 (*citing C.B. v. Garden Grove Unified Sch. Dist.*, 635 F. 3d 1155, 1160 (9th Cir. 2011); *Alamo Heights Indep. Sch. Dist. v. State Bd. of Educ.*, 790 F.2d 1153, 1161 (5th Cir. 1986)).

that included *hundreds* of pages of testimony by affidavit and documentation that amply establishes R.F.'s significant and severe autism-related deficits and how they are being appropriately addressed and remediated through R.F.'s dual services program; (c) demonstrably failed to recognize and apply controlling precedent within the Second Circuit; (d) imposed an unduly elevated, clearly erroneous and "elevated" Prong II standard as to R.F.'s unilateral placement and program; (e) callously blamed plaintiffs for what was defendant's Prong I failure to provide evaluative information for the record; (f) communicated unrealistic, if not cruel, expectations of progress for a ten-year-old child with "severe" autism; (g) revealed an inaccurate view of the special education "continuum;" and (h) failed to recognize the Prong III equities that clearly were, and still are, in plaintiffs' favor.

**E.  The SRO's Inaccurate Reading of the Record and Application of the Law**

35. On or about January 16, 2024, plaintiffs filed an appeal from the IHO's decision to the SRO in order to seek reversal of the IHO's decision.

36. On or about March 25, 2024, the SRO rendered his Decision dismissing the plaintiffs' appeal.  The SRO ruled that:

- While the IHO appeared brusque during portions of the impartial hearing, the hearing record does not support the parents' argument that the IHO restricted the parents' right to make a proper record. SRO Decision 8.

- The argument that the privately obtained home-based ABA services constituted maximization is an issue that must be examined as an equitable consideration. Among the factors that may warrant a reduction in tuition under equitable considerations is whether the frequency of the services or the rate for the services were excessive (see E.M., 758 F.3d at 461 [noting that whether the amount of the private school tuition was reasonable is one factor relevant to equitable considerations]). SRO Decision 9.

- Several courts have held that the IDEA does not require school districts, as a matter of course, to design educational programs to address a student's difficulties in generalizing skills to other settings outside of the school environment, particularly where it is determined that the student is otherwise likely to make progress, at least in the classroom setting… SRO Decision 11.

- That R.F.'s mother testified that Titus met the student's needs during the time that R.F. was in school, but also testified that the after-school services were necessary for R.F. to make meaningful progress. SRO Decision 13.

- Although it is difficult to parse out whether the program at Titus met the student's needs in the absence of the after-school services because the after-school services were running simultaneously with the student's programming at Titus, the hearing record includes sufficient evidence to support the IHO's findings. SRO Decision 13-14.

- Overall, the hearing record supports the IHO's conclusion that the after-school services, although beneficial to the student and understandably desired by the parents to be continued, were not necessary for the student to receive educational benefits from the Titus School. SRO Decision 14.

- In past decisions SROs have permitted a parent to request a district-funded IEE in a due process complaint notice in the first instance (see, e.g. Application of the Dep't of Educ., Appeal No. 21-135); however, SROs have also expressed reservations that this is not the process contemplated by the IDEA and its implementing regulations (Application of the Dep't of Educ., Appeal No. 23-034; Application of a Student with a Disability, Appeal No. 22-150) and observed that the approach has caused more problems than it resolves (34 CFR 300.502[b]; 8 NYCRR 200.5[g][l ]). SRO Decision 14.

37. In reaching the conclusion that the hearing record supported the IHO's determinations, the SRO neglected to address Plaintiffs' contentions of the IHO's misapplication of Pre-*Endrew F.* case law. Like the IHO, the SRO relied on case law that utilized the "some benefit" standard in determining the benefit owed a student under the IDEA, and in addressing the value and necessity of skill generalization for severely disabled students like R.F. (*See*, SRO Decision, pg. 10-13). The Supreme Court replaced the inadequate "some benefit" and "more than de minimis" standards in their 2017 unanimous and landmark decision *Endrew F.*, with the more appropriate standard, whether the student's academic program and goals are "appropriately ambitious in light of [their] circumstances." *Endrew F. v. Douglas County Sch. Dist. RE-1*, 580 U.S. 386, 388 (1917).

38. Further, the SRO failed to grapple with Second Circuit authority where the Court acknowledged that the severity of a student's autism may justify the need for supplemental, after school services delivered in the home and surrounding community. *See L.K.*, 674 Fed. Appx. 100.

39. While the SRO points to portions of the record that mention "generalization," the SRO's analysis did not grapple with the facts to determine whether R.F.'s home programing was for sole or even primary purpose of generalization. While R.F.'s home ABA and OT services had an emphasis on his ADL and self-care skills, such a fact does not, without more, show that the services were for the sole purpose of generalizing skills. (*Application of a Student with a Disability,* Appeal No. 23-237).

40. In regard to the plaintiffs' request for funding for an updated neuropsychological evaluation, the SRO failed to grapple with the unique facts presented in R.F.'s case. The SRO determined it was not appropriate for the plaintiff to raise disagreements with the DOE's evaluations in the due process complaint, and the SRO has set for that such disagreements should first be taken to district to give them an opportunity to resolve any deficiencies with their evaluations. (SRO Decision, pg. 15). As set forth in the Amended Demand for Due Process, plaintiffs' main assessment grievance is that the defendant failed to conduct **any** evaluations or assessments, including the required Triennial Evaluation. (P-A, at 5; P-B, at 5).

## II.  The Purpose of This Appeal

41. This action thus presents an appeal from the SRO's Decision to the extent that is erroneous and contrary to law and statute and goes against the clear weight of the evidence, the review standards set by the Second Circuit that R.F.'s educational program which when viewed under the totality of the circumstances and encompasses *all* of the programming and services obtained by the parents, is appropriate and addresses the student's special education needs.

42. The SRO applied erroneous and unduly elevated Prong II and Prong III standards, misstated facts that appear and are evident in the record, failed to consider the totality of the evidence. Moreover, the SRO seemingly ignored one plaintiff's main contentions with the IHO ruling, which after confining the parties to issues of Prong II, denied reimbursement for R.F.'s

supplemental service on Prong III equitable consideration grounds. Further, plaintiffs bring this appeal as both the IHO and SRO flatly denied all of R.F.'s after school programing without consideration of the only evaluative information provided for the record, R.F.'s 2021 Neuropsychological Evaluation and Report[4].

43. On this appeal, which is in the nature of a modified *de novo* review, this Court should independently review the record.  In the case at bar, this Court is entitled to apply a pure *de novo* approach to questions of law and mixed questions of law and fact, and to "findings" that the SRO never made, *i.e.*, claims that were never properly addressed and considered.

44. The district court satisfies its obligation to provide "due weight" to the *factual* determinations from below by employing "some deference" to the administrative findings.  *See Walczak v. Florida Union Free Sch. Dist.*, 142 F.3d 119 (2d Cir. 1998); *Knable v. Bexley City Sch. Dist.*, 238 F.3d 755, 764 (6th Cir. 2001).  However, "[t]he amount of weight given to the administrative proceedings is discretionary." *Wolfe v. Taconic-Hills Cent. Sch. Dist.*, 167 F.Supp. 2d 530, 533 (N.D.N.Y. 2001) (*referencing Wall v. Mattituck-Cutchogue Sch. Dist.*, 945 F. Supp. 501, 507 (E.D.N.Y. 1996)).  A reviewing district court must not "simply adopt the state administrative findings without an *independent* re-examination of the evidence." *Doe v. Metropolitan Nashville Pub. Sch.*, 133 F.3d 384, 387 (6th Cir. 1998).

45. Where, as here, the underlying decision that is being appealed is not supported by the existing record, is expressly erroneous in that it relies on Pre-*Endrew F.* precedents in determining the educational benefit owed to R.F. in light of his after-school programming, the

---

[4] R.F.'s neuropsychological evaluation and report recommended that he receive home based ABA services and supports, in addition to those he receives in school in order to, "promote independence, and further develop requisite skills like attention, self-regulation, and communication. Further developing these skills will promote greater availability for learning in the classroom and enable him to function appropriately in school." (P-D at pg. 58-9). The report further recommended that R.F. receive ongoing OT and SLT at the frequency at duration recommended by his providers. *(Id.*, at 59).

reviewing court need not accord much, if any, weight to the administrative fact-findings. *See*; *R.E.*, 694 F.3d 167; *M.H. v. N.Y.C. Dep't of Educ.,* 685 F.3d 217 (2d Cir. 2012); *Evans v. Bd. of Educ.*, 930 F. Supp. 83, 93 (S.D.N.Y. 1996).

46. Accordingly, plaintiffs seek:

(a)  partial reversal of the SRO's Decision;

(b)  a finding that defendant *conceded* that it failed to offer R.F. a FAPE for R.F.'s 2023-2024 school year and that it had no Prong III equitable defenses to raise;

(c)  a finding that plaintiffs, by reason of R.F.'s unique needs as a student with severe autism and interfering behaviors, amply met the applicable standards for *Burlington*/*Carter* relief, including reimbursement of both R.F.'s school based program at Titus, and R.F.'s home- and community-based services and; and

(d)  a finding that the equities favor the plaintiffs within the meaning of the IDEIA statute;

(e)  an order granting reimbursement for R.F.'s home and community-based services and supports; and

(f)  an order granting plaintiffs leave, as prevailing parties, to file a fee application for costs and fees pursuant to the fee-shifting provisions of the IDEIA.

## III. Pendency

47.  Incidental to the appeal being prosecuted herein, plaintiffs continue to invoke R.F.'s 20 U.S.C. § 1415(j) pendency rights. *See, e.g. Honig v. Doe*, 484 U.S. 305 (1988). IHO James McKeever's now issued a now final and non-appealable Decision relating to the R.F.'s 2021-2022 school year on November 16, 2023.[5] Pursuant to IHO Mckeever's decision, R.F.'s ongoing

---

[5] Plaintiffs anticipate that defendant will argue R.F.'s pendency entitlements do not rest in IHO McKeever's November 16, 2023 decision, since the DOE does not have a signed "Pendency Agreement" based on that decision.

pendency entitlements include tuition reimbursement at the Titus School, funding for up to 10 hours per week of home based ABA, up to 2 hours per week of SLT, Social Skills group one day per week, up to 2 hours per week of OT, up to 2 hours per week of parent training and counseling, up to 2 hours per week of ABA supervision, monthly ABA meetings (up to 1 hour per therapist), monthly interdisciplinary meetings (1 hour per service provider), and the cost of transportation to and from school.[6]

48.    We urge that the record below amply supports a finding that R.F.'s supplemental home and community based service, when considered with R.F.'s Titus placement, are "reasonably calculated" to provide R.F. with a meaningful educational benefit and that, when applying the appropriate Prong III equities test, the equities sufficiently favor R.F.

49.    Plaintiffs have exhausted their administrative remedies.

WHEREFORE, it is respectfully submitted that this Court, upon its modified *de novo* review, while maintaining and enforcing R.F.'s pendency entitlements should:

(a)    declare that defendant *conceded* that it failed to offer R.F. a FAPE for R.F.'s 2023-2024 school year;

(b)    declare that plaintiffs, by reason of R.F.'s unique needs as a student with *severe* autism and interfering behaviors, amply met the applicable standards for

---

Plaintiffs made previous attempts to contact the defendant in order to execute a "Pendency Agreement" based on the IHO McKeever's November 16, 2023 Decision. (Ex. P-2). Plaintiffs contend that pendency is an automatic right, and is not contingent on the DOE's signing of a "Pendency Agreement." *See Zvi D. by Shirley D. v. Ambach*, 694 F. 2d 904, 906 (2d Cir. 1982).

[6] An alternative basis for pendency can be found in the IHO McKeever's now final and non-appealable August 15, 2023 Decision relating to R.F.'s 2022-2023 school year. (Ex. P-1). On September 13, 2023, defendant signed a Pendency Agreement based on IHO McKeever's August 14, 2023 decision. (*Id.*). Pursuant to IHO McKeever's August 15, 2023 Decision, R.F.'s ongoing pendency entitlements include tuition reimbursement at the Titus School, funding for up to 10 hours per week of home based ABA, up to 2 hours per week of SLT, up to 1 hour per week of PT, Social Skills group one day per week, up to 2 hours per week of OT, up to 2 hours per week of parent training and counseling, up to 2 hours per week of ABA supervision, monthly ABA meetings (up to 1 hour per therapist), monthly interdisciplinary meetings (1 hour per service provider), and the cost of transportation to and from school.

*Burlington/Carter* relief, including reimbursement of both R.F.'s school based program at Titus and R.F.'s home and community-based services;

(c)     declare that the equities favor the plaintiffs;

(d)     grant plaintiffs full reimbursement for R.F.'s 2023-2024 school year, including the cost of R.F.'s home- and community-based services and supports. These services include  up to 10 hours per week of ABA at a rate of $285 per hour, monthly ABA meetings (1 hour per therapist) at a rate of $285 per hour, monthly interdisciplinary team meetings (1 hour per service provider) at a rate of $285 per hour, up to 2 hours per week of parent training and counseling at a rate of $285 per hour, up to 2 hours per week of ABA supervision at a rate of $285 per hour, up to 2 hours per week of SLT at a rate of $260-$280 per hour, up to 2 hours per week of OT at a rate of $225-$250 per hour;

(e)     declare plaintiffs' status as a "prevailing party;"

(f)     grant plaintiffs leave to file a fee application for purposes of statutory attorneys' fees and other recoverable costs, both at the two-tier administrative levels and in this action, pursuant to the express fee-shifting provisions of the federal IDEIA statute; and

(g)     grant plaintiffs such other, further and different relief as may be just under the circumstances.


Dated: April 24, 2024
        New York, New York                                   __*s/ Gary S. Mayerson*___
                                                             Gary S. Mayerson (GSM 8413)
                                                             Mayerson & Associates
                                                             *Attorneys for Plaintiffs-Appellants*
                                                             200 West 41st Street, 17th Floor
                                                             New York, New York
                                                             (212) 265-7200
                                                             www.mayerslaw.com