UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------

R.F., by his parents H.F. and C.F.,

                Plaintiffs-Appellants,

      - against -

New York City Department of Education,               1:24-cv-03117 (MKV)

                Defendant-Appellee.

----------------------------------------------------------------

## PLAINTIFFS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR
## MOTION FOR A MODIFIED *DE NOVO* REVIEW

Mayerson & Associates
*Attorneys for Plaintiffs-Appellants*
200 West 41st Street, 17th Floor
New York, New York 10036
(212) 265-7200
(212) 265-1735 (facsimile)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................ii

PRELIMINARY STATEMENT ........................................................................................... 1

QUESTIONS PRESENTED .................................................................................................. 2

STATEMENT OF FACTS AND PROCEDURAL HISTORY .................................................3

ARGUMENT .........................................................................................................................9

    THE APPLICABLE LEGAL STANDARDS ................................................................9

    STANDARD OF REVIEW ..........................................................................................11

    I. THE DEFENDANT CONCEDED PRONG I AT HEARING.....................................14

    II. PLAINTIFFS MET THEIR PRONG II BURDEN ...................................................14

    III. THE SRO MISAPPLIED PRONG III AND THIS COURT SHOULD FIND THAT R.F.'S PARENTS AMPLY MET THE CONTROLLING PRONG III STANDARD FOR FULL REIMBURSEMENT FOR R.F.'S AFTERSCHOOL SERVICES.......................................15

        A. R.F.'S UNIQUE SEVERITY REQUIRES HE RECEIVE AFTER SCHOOL SERVICES . .........17

        B. THE SRO ERRED IN DETERMINING R.F.'S AFTERSCHOOL SERVICES WERE FOR THE PURPOSES OF GENERLIZATION AND MAXIMIZATION . ...........................................20

    IV.THE SRO ERRED IN AFFIRMING THE IHO'S DENIAL FOR FUNDING FOR AN UPDATED NEUROPSYCHOLOGICAL EVALUATION.................................................23

CONCLUSION.....................................................................................................................25

TABLE OF AUTHORITIES

FEDERAL CASES

*B.R. ex rel. K.O. v. New York City Department of Education,*
    910 F. Supp. 2d 670 (S.D.N.Y. 2012)...............................................................12, 15

*Board of Education of East Windsor Regional School District v. Diamond,*
    808 F.2d 987 (3d Cir. 1986) ...................................................................................17

*C.F. v. New York City Department of Education,*
    746 F.3d 68 (2d Cir. 2014)..............................................................10, 12, 13, 14

*C.L. v. Scarsdale Union Free School District,*
    744 F.3d 826 (2d Cir. 2014).............................................................................12, 14

*C.L. v. New York City Department of Education,*
    552 Fed. Appx. 81 (2d Cir. 2014) (Summary Order) ............................................13

*Carmel Central School District v. V.P. ex rel. G.P.,*
    373 F. Supp. 2d 402 (S.D.N.Y. 2005)....................................................................19

*DeLeon v. Susquehanna Community School District,*
    747 F.2d 149 (3d Cir. 1984).....................................................................................17

*Doe v. East Lyme Bd. Of Educ.,*
    790 F.3d 440, 454 (2d Cir. 2015) ...........................................................................24

*Endrew F. v. Douglas County Sch. Dist. RE-1, 5*
    80 U.S. 386 (2017)..................................................................................................23

*E.S. ex rel. B.S. v. Katonah-Lewishboro School District,*
    742 F.Supp. 2d 417 (S.D.N.Y. 2010)......................................................................14

*Evans v. Board of Education,*
    930 F. Supp. 83 (S.D.N.Y. 1996). ..........................................................................13

*F.O. v. New York City Department of Education,*
    976 F. Supp. 2d 499 (S.D.N.Y. 2013).....................................................................12

*Florence County School District Four v. Carter,*
    510 U.S. 7 (1993).....................................................................................................15

*Forest Grove School District v. T.A.,*
    694 557 U.S. 230 (2009).........................................................................................15

*Frank G. v. Board of Education,*
    459 F.3d 356 (2d Cir. 2006), *cert. denied*, 128 S. Ct. 436 (2007) ...............7, 10, 14

*Gagliardo v. Arlington Central School District,*
    489 F.3d 105 (2d Cir. 2007).................................................................................12, 14

*Honig v. Doe,*
    484 U.S. 305 (1988).................................................................................................10

FEDERAL CASES, CONTINUED

*Knable v. Bexley City School District,*
    238 F.3d 755 (6th Cir. 2001) ..................................................13

*Lillbask v. State of Connecticut Department of Education,*
    397 F.3d 77 (2d Cir. 2005)....................................................12

*L.K. v. N.Y.C. Dep't of Educ.,*
     674 F. App'x 100 (2d Cir. 2017)........................................9, 20

*L.K. v. New York Citv Dep't of Educ.,*
    *2016 WL 899321* (S.D.N.Y. Mar. I, 2016) ...............16, 22, 23

*M.H. v. New York City Department of Education,*
    685 F.3d 217 (2d Cir. 2010).................................................12

*M.S. v Board of Education,*
    231 F.3d 96 (2d Cir. 2000), *cert. denied,* 532 U.S. 942 (2001)............11

*Mr. and Mrs. A. ex rel. D.A. v. New York City Department of Education,*
    769 F. Supp. 2d 403 (S.D.N.Y. 2011)..............................10, 15

*Mrs. B. v. Milford Board of Education,*
    103 F.3d 1114 (2d Cir. 1997)...........................................11, 13

*Mrs. C. v. Voluntown Board of Education,*
    226 F.3d 60 (2d Cir. 2000) ..................................................11

*P.K. v. New York City Department of Education,*
    526 Fed. Appx. 135 (2d Cir. 2013) (Summary Order) ...........12

*Polk v. Susquehanna Intermediate Unit 16,*
    853 F.2d 171 (3d Cir. 1988)..................................................17

*R.E. v. New York City Department of Education,*
    694 F.3d 167 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 2802 (2013) ...............10, 12, 13, 14, 15

*R.K. v. New York City Department of Education,*
    2011 U.S. Dist. LEXIS 32248, *aff'd R.E. v. New York City Department of Education,*694 F.3d 167 (2d Cir. 2012) ....................15

*Carmel Central School District v. V.P. ex rel. G.P.,*
    373 F. Supp. 2d 402 (S.D.N.Y. 2005).................................19

*School Committee of Burlington v. Department of Education,*
    471 U.S. 359 (1985)...........................................3, 7, 8, 9, 11

*Still v. DeBuono,*
    101 F.3d 888 (2d Cir. 1996).................................................11

*Thompson R2-J Sch. Dist. v. Luke P., ex rel. Jeff P.,*
    540 F.3d 1143, 1152 (10th Cir. 2008) ...............................22, 23

*Walczak v. Florida Union Free School District,*

iii

142 F.3d 119 (2d Cir. 1998)...................................................................................12, 13

*Wolfe v. Taconic-Hills Central School District,*
    167 F. Supp. 2d 530 (N.D.N.Y. 2001) ............................................................................13

## STATUTES AND LEGISLATIVE MATERIALS

20 U.S.C. § 1400 *et seq.*....................................................................................................1

20 U.S.C. § 1412(a)(1) ......................................................................................................10

20 U.S.C. § 1412(a)(2) ......................................................................................................24

20 U.S.C. § 1414(d) ...........................................................................................................10

20 U.S.C. § 1414(d)(1)(A) .................................................................................................10

20 U.S.C. § 1414(d)(1)(B) .................................................................................................10

20 U.S.C. § 1415 ..........................................................................................................3, 25

20 U.S.C. § 1415(i)(2)(C) ..................................................................................................11

20 U.S.C. § 1415(j) ............................................................................................................11

34 CFR 300.502[b] .............................................................................................................24

8 NYCRR 200.5[g][l] ..........................................................................................................24

New York Education Law Section 200.4(b)(4) ..................................................................24

## ADDITIONAL RESOURCES

H. Rep. No. 332 ..................................................................................................................17

121 Cong. Rec. 19492 (1975).............................................................................................22

*Application of a Student with a Disability,* Appeal No. 23-237 .......................................22

## PRELIMINARY STATEMENT

This memorandum of law and the accompanying Affidavit of Gary S. Mayerson are respectfully submitted in support of plaintiffs' motion for a modified *de novo* review of the March 25, 2024 Decision of the New York State Review Officer ("SRO") in accordance with the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. § 1400 *et. seq. See* Ex. A.[1]  The SRO's Decision should be reversed.

Plaintiff R.F. is a boy with severe autism who, for years, has needed a dual school and after school program. The trial level hearing officer (IHO Michelle Babbitt, Esq.) awarded R.F. tuition reimbursement for R.F.'s school placement but then failed to appropriately grapple R.F.'s need for after school services. The SRO improperly affirmed the December 08, 2023 decision of the trial-level Impartial Hearing Officer ("IHO"), rendered after one day of trial (Ex. B).  As shown below, the IHO found, *inter alia*, that the defendant, the New York City Department of Education ("DOE"), had failed, for the twelve-month 2023-2024 school year, to offer plaintiff R.F. a free and appropriate public education ("FAPE"), as mandated by the IDEA, but failed to award R.F. the requested relief of after school services[2]. In coming to this determination, the IHO applied her own, unduly elevated Prong II standard, and misapplied the controlling, legal standard regarding R.F.'s need for supplemental, afterschool services. Like the IHO, the SRO relied on case law that utilized the "some benefit" standard in determining the benefit owed a student under the IDEA. (*See*, Ex. A at 10-13).

---

[1] Exhibit references ("Ex.") within this memorandum reference the exhibits attached to the supporting Declaration of Gary S. Mayerson. Any references to IHO Ex___ (e.g. IHO Ex. 1) refer to the IHO's exhibits at trial. References to the transcript of the hearing before the IHO are denominated as "T."  Plaintiffs' hearing exhibits are designated as "P-."  Defendant's hearing exhibits are designated as "D-."

[2] R.F.'s supplemental services included: up to 10 hours per week of home based ABA, up to 2 hours per week of SLT, up to 1 hour per week of PT, Social Skills group one day per week, up to 2 hours per week of OT, up to 2 hours per week of parent training and counseling, up to 2 hours per week of ABA supervision, monthly ABA meetings (up to 1 hour per therapist), monthly interdisciplinary meetings (1 hour per service provider), and the cost of transportation to and from school.

Based upon its independent review of the compelling evidentiary record, the enforcement of the controlling statutes, and the application of the Second Circuit's controlling review standards, this Court should reverse the SRO's March 25, 2024, Decision and the IHO's December 08, 2023, Order, and award R.F. and his parent's the requested relief for supplemental services, and funding for an updated neuropsychological evaluation.  The administrative record amply supports that R.F.'s unique special educational needs require supplemental one-to-one ("1:1") ABA instruction, supplemental 1:1 Speech Language Therapy ("SLT"), and supplemental 1:1 Occupational Therapy ("OT") for him to make meaningful progress.

Pursuant to 20 U.S.C. § 1415(j), in order to preserve R.F.'s educational *status quo* until there is a final adjudication, petitioners continue to invoke R.F.'s automatic and unconditional pendency entitlements as per IHO James McKeever's November 15, 2023 Decision (Ex. C) awarding petitioners tuition reimbursement at the not-for-profit Titus School ("Titus"), plus funding for up to 10 hours per week of home-based ABA, up to 2 hours per week of SLT, up to 1 hour per week of PT, Social Skills group one day per week, up to 2 hours per week of OT, up to 2 hours per week of parent training and counseling, up to 2 hours per week of ABA supervision, monthly ABA meetings (up to 1 hour per therapist), monthly interdisciplinary meetings (1 hour per service provider), and the cost of transportation to and from school. Significantly, the DOE never took an appeal from IHO McKeever's November 16, 2023 Decision; accordingly, that decision is now final and non-appealable.

## QUESTIONS PRESENTED

The issues present in this case are narrow in scope.  This case is <u>not</u> about whether the defendant offered R.F. a FAPE required by the IDEA – the defendant has conceded that failure at every stage of this litigation.  T. 26.  This case is also <u>not</u> about R.F.'s placement, tuition, and costs

at Titus – the IHO awarded that relief to R.F., and the defendant did not appeal from that finding. Ex. B at 14. Rather, this case turns on an adjudication of the following question pursuant to the "three-prong test" established in *School Committee of Town of Burlington v. Department of Education*, 471 U.S. 359 (1985), and *Florence County School District Four v. Carter,* 510 U.S. 7 (1993): Did the SRO apply an erroneous legal standard in its analysis of the Prong III equities?

Based upon an independent review of the compelling evidentiary record and the application of the Supreme Court's and Second Circuit's review and reimbursement standards, this Court should reverse the reimbursement restriction contained in the SRO's March 25, 2024, Decision and award reimbursement for the cost of R.F.'s supplemental (after school) services. In all events, in view of the IHO's award of R.F.'s tuition at the not-for-profit Titus, this Court should rule that plaintiffs already have standing as a "prevailing party" to seek attorneys' fees and costs as per 20 U.S.C. § 1415.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

R.F. is (now) a ten-year-old boy diagnosed with autism, PTEN Genetic Mutation, and global developmental delays. Ex. P-D at 49, P-Y. R.F. presents with pronounced and *severe* deficits across the board, including academics/pre-academics (Ex. P-D at 49, P-U), communication (P-U, P-W, T.69), attention (P-D at 49; T. 137), behaviors (P-D at 3-25, 57; P-U; P-Y; Tr. 136:19 – Tr. 137:7), sensory processing including auditory processing and oral sensory processing (Ex. P-X, para 3; T. 82), social/emotional (Ex. P-D, at pg. 13-20, P-U, at para. 56, P-X, P-Y), gross motor (Ex. P-S, P-X, P-Y), fine motor (Ex. P-M, P-S, P-X), oral motor planning (P-Z at 5), visual perceptual skills (Ex. P-O), and ADL/self-help skills (Ex. P-V; T. 117:13; Tr. 118:16-24), among others.

For the 2023-2024 school year, H.F., R.F.'s mother, attended an IEP meeting for RF. on January 17, 2023, along with representatives from Titus. Ex. P-Y. Before the meeting, H.F. shared R.F.'s then most recent progress reports from Titus, his most recent neuropsychological evaluation, and additional reports from R.F.'s afterschool ABA provider and OT provider. Ex P-D, P-E. During the IEP meeting, no one from the DOE challenged the reports recommending that R.F. receive 1:1 ABA instruction with supplemental services or that R.F. has been progressing with his attendance at Titus and his afterschool services. Ex. P-Y.

During his IEP meeting, H.F. learned that defendant was recommending an 8:1:1 class for R.F.'s 2023-2024 school year. Ex. P-Y, at para 5. H.F. and the Titus staff present shared that they were very concerned with the DOE's recommendation, as it did not provide R.F. with the 1:1 ABA instruction and supports he needed to make meaningful progress. Ex. B and P-Y, at para 5-6. According to R.F.'s Titus reports and private neuropsychological evaluation, he needed 1:1 ABA instruction in a small classroom setting to make meaningful and appropriate educational progress. Ex. P-D, at 56-58 and P-E. The IEP team was also informed of R.F.'s need for robust supplemental services in SLT, OT, and ABA instruction. Ex. P-Y; Ex. P-D, at pg. 48-63.

On June 15, 2023, H.F. wrote to defendant's CSE to reiterate her concerns about the program recommended at the IEP meeting, and inform the CSE that she had yet to receive a school location letter for her son. Ex. P-C. H.F. was concerned with the recommended program because R.F. needed ABA methodologies to make progress. *Id.* She was also concerned that, due to the student-to-teacher ratio in class, the recommended program would be unable to provide the 1:1 instruction that R.F. needed. *Id.*

On or about June 22, 2023, H.F. received a school location letter for 75M811: P.S. M811 – Mickey Mantle School ("Recommended School"). Ex. P-Y. H.F. contacted the recommended

school shortly after receiving the SLL to request a tour and inquire about the school's program. Ex. P-Y, at 6. H.F. then emailed the placement school on July 10, 2023, to request a tour of the recommended school again. *Id.* H.F. did not receive a response to her tour request. *Id.*

For the 2023-2024 school year, plaintiffs filed their due process complaint on June 30, 2023. Ex. P-A. Plaintiffs subsequently filed their amended demand for due process on August 23, 2023. Ex. P-B. Plaintiffs sought reimbursement relief for their unilateral program for the 2023-2024 school year. Whereas the DOE had recommended an 8:1:1 classroom program with limited related services, R.F.'s unilateral program consisted of 1:1 instruction in an ABA-driven school, Titus, along with afterschool services for SLT, OT, and home ABA services, including direct ABA therapy, parent training, ABA supervision, ABA team meetings, and Interdisciplinary Team meetings. Ex. P-B.

Before the hearing, a pre-hearing conference (PHC) was held, and the defendant stated that it was still investigating whether the matter could be referred for settlement. (IHO Ex. 1; T. 3). The IHO issued a subsequent PHC Summary and Order wherein, amongst other things, she ordered the DOE to state its position regarding Prong I and the appropriateness of R.F.'s unilateral placement. *Id.* The IHO's PHC summary ordered the parties to disclose their witnesses and documentary evidence to each other and the IHO five business days before the scheduled hearing. Additionally, the IHO's order directed the parties to disclose their intent to cross-examine any witnesses disclosed two days before the scheduled hearing date. (IHO Ex. 1 at 3).

The underlying impartial hearing spanned one day, lasting about four hours. Prior to, and at the outset of the hearing, the DOE conceded Prong I, admitting that it failed to provide R.F. with a FAPE for the 2023-2024 school year. (T. 26). The DOE also conceded Prong III, admitting that there were no equitable considerations against the full relief requested by plaintiffs. (T. 35).

5

Accordingly, the hearing focused on Prong II, and the DOE was therefore judicially estopped from invoking any Prong III arguments.

The defendant did not call a single witness or offer a single exhibit into evidence. Plaintiffs, on the other hand, presented voluminous documentary evidence and testimony from five witnesses regarding R.F.'s global delays, his need for 1:1 ABA instruction, and his need for supplemental services to address his extensive deficits. As stated by R.F.'s providers and his 2021 neuropsychological evaluation, afterschool services were necessary for R.F. due to the extent of his deficits. Ex. P-D at 48-63; Ex; P-U; Ex. P-V; Ex. P-W; Ex. P-X. R.F. is a student who needs multiple opportunities to learn and reinforce the skills he's taught in school. Ex. P-D at 48-63. He is a student with severe cognitive delays, and, as such, he needs each task or skill he is being taught to be broken down into basic steps, with sufficient time given to master each step. Ex P-W, at para. 25; Tr. 129-130. In other words, R.F.'s deficits mean that he needs more time to master basic skills and concepts for his academics, related services, and ADL skills. R.F.'s mother, school, and supplemental service providers all testified to his continued progress with his services and school placement. Tr. 185-186.

After the hearing, the DOE again confirmed that it conceded Prongs I and III. (T. 204). The IHO ordered the parties to submit their post-hearing briefs discussing Prong II on or before November 28, 2023, by the close of business. (T. 207). The IHO issued her FOFD on December 8, 2023. Therein, the IHO found that the DOE had conceded that it failed to offer R.F. a FAPE for the 2023-2024 school year; that Titus was an appropriate placement for R.F.; and that there were no equitable considerations against awarding R.F.'s parent's full tuition reimbursement. Ex. B, at 16. However, the IHO denied any relief relating to R.F.'s after-school ABA (including parent training, supervision, ABA team meeting, and interdisciplinary meets), SLT, and OT services. *Id*,

at 18. In doing so, the IHO reasoned that petitioners failed to meet their burden concerning the relief requested for R.F.'s after-school SLT, OT, and ABA services. *Id.* The IHO did not, however, state the "burden" she was relying on in making this determination. This fact is crucial, as the section in which the IHO discussed R.F.'s afterschool services seems to be separate from her Prong II analysis, (i.e. whether R.F.'s placement and program is reasonably calculated to provide him an educational benefit), and her Prong III analysis, where she ordered the parties not discuss the Prong III equities in their post hearing briefs, as the defendant had already conceded that prong during the hearing. (Ex. B at 16).

Moreover, the IHO applied her own, unduly elevated Prong II standard, where she stated that petitioners failed to show why R.F.'s home ABA, SLT, and OT services were: 1) ***necessary*** for him to make progress, 2) failed to show evaluative information and progress reports from the current school showing why his services were ***necessary***, 3) failed to show evidence that R.F. would have regressed without these services, and 4) failed to show evidence specifically showing causation between R.F.'s home services and his progress in school.

On or about January 16, 2024, plaintiffs filed a limited appeal from the IHO's decision to the SRO in order to seek reversal of the IHO's decision regarding R.F.'s after-school services, and funding for an updated neuropsychological evaluation. In their limited appeal, plaintiffs argued that the record before the IHO sufficiently established R.F.'s need for at least some meaningful level of after-school services in ABA, SLT, and OT. Pursuant to *Burlington/Carter,* as well as *Frank G.*, Plaintiffs' burden was to show that these services were "reasonably calculated" to provide R.F. with a meaningful educational benefit. *Burlington*, 471 U.S. 359; *Carter*, 510 U.S. 7; *Frank G.*, 459 F.3d 356. Further, plaintiffs argued that the IHO erred in denying plaintiffs request for an updated Neuropsychological Evaluation.

On March 25, 2024, the SRO rendered its Decision dismissing the plaintiffs' appeal. The

SRO ruled that:

- The argument that the privately obtained home-based ABA services constituted maximization is an issue that must be examined as an equitable consideration. Among the factors that may warrant a reduction in tuition under equitable considerations is whether the frequency of the services or the rate for the services was excessive (see E.M., 758 F.3d at 461 [noting that whether the amount of the private school tuition was reasonable is one factor relevant to equitable considerations]). Ex. A, at 9.

- Several courts have held that the IDEA does not require school districts, as a matter of course, to design educational programs to address a student's difficulties in generalizing skills to other settings outside of the school environment, particularly where it is determined that the student is otherwise likely to make progress, at least in the classroom setting… Ex. A, at 11.

- That R.F.'s mother testified that Titus met the student's needs during the time that R.F. was in school, but also testified that the after-school services were necessary for R.F. to make meaningful progress. Ex. A, at 13.

- Although it is difficult to parse out whether the program at Titus met the student's needs in the absence of the after-school services because the after-school services were running simultaneously with the student's programming at Titus, the hearing record includes sufficient evidence to support the IHO's findings. Ex. A, at 13-14.

- Overall, the hearing record supports the IHO's conclusion that the after-school services, although beneficial to the student and understandably desired by the parents to be continued, were not necessary for the student to receive educational benefits from the Titus School. Ex. A, at 14.

- In past decisions SROs have permitted a parent to request a district-funded IEE in a due process complaint notice in the first instance (see, e.g. Application of the Dep't of Educ., Appeal No. 21-135); however, SROs have also expressed reservations that this is not the process contemplated by the IDEA and its implementing regulations (Application of the Dep't of Educ., Appeal No. 23-034; Application of a Student with a Disability, Appeal No. 22-150) and observed that the approach has caused more problems… Ex. A, at 14.

Plaintiffs filed this limited appeal from the SRO's Decision to the extent that is erroneous

and contrary to law and statute and goes against the clear weight of the evidence, the Supreme

Court's reimbursement standards in *Burlington*, 471 U.S. 359, and *Carter*, 510 U.S. 7, the review

standards promulgated by the Second Circuit, and the SRO's own findings that R.F.'s educational

program which when viewed under the totality of the circumstances and encompasses *all* of the

programming and services obtained by the parents, is <u>appropriate and addresses the student's</u> <u>special education needs</u>.

Plaintiffs allege that the SRO applied erroneous and unduly elevated Prong II and Prong III standards, misstated facts that appear and are evident in the record, and failed to consider the totality of the evidence. Like the IHO, the SRO relied on case law that utilized the "some benefit" standard in determining the benefit owed a student under the IDEA, and in addressing the value and necessity of skill generalization for severely disabled students like R.F. (*See*, Ex. A, p. 10-13). Further, the SRO failed to grapple with Second Circuit authority where the Court acknowledged that the severity of a student's autism may justify the need for supplemental, after-school services delivered in the home and surrounding community. See, *L.K. v. N.Y.C. Dep't of Educ.*, 674 F. App'x 100 (2d Cir. 2017)

<u>**ARGUMENT**</u>

<u>**THE APPLICABLE LEGAL STANDARDS**</u>

The Supreme Court has established a three-part test, referred to as the *Burlington/Carter* test or doctrine, to determine whether a special education student is entitled to reimbursement relief for placement in a private program, as follows: (1) whether the school district offered the child a free appropriate public education ("FAPE") under the terms of the IDEA ("Prong I"); (2) whether the private educational programming chosen by the parents was an appropriate and "reasonably calculated" placement under the IDEA ("Prong II"); and (3) whether a balancing of equitable considerations favors reimbursement ("Prong III"). *See Carter*, 510 U.S. 7; *Sch. Comm. of Town of Burlington*, 471 U.S. 359. On this last point, as shown below, plaintiffs urge that the SRO erred in their analysis of the controlling law and specific facts of this case.

As to Prong I, the IEP is "the centerpiece of the [IDEA's] education delivery system for disabled children." *Honig v. Doe*, 484 U.S. 305, 311 (1988); *see also R.E. v. New York City Dep't of Educ.*, 694 F.3d 167, 188 (2d Cir. 2012), *cert. denied,* 133 S. Ct. 2802 (2013); *Frank G. v. Bd. of Educ.*, 459 F.3d 356 (2d Cir. 2006), *cert. denied*, 128 S. Ct. 436 (2007). A school district must develop an appropriate and "reasonably calculated" IEP during a meeting with the student's parents. *C.F. v. New York City Dep't of Educ.*, 746 F.3d 68, 78-79 (2d Cir. 2014); *R.E.*, 694 F.3d at 190; *Frank G.,* 459 F.3d at 363; 20 U.S.C. § 1414(d)(1)(A)–(B). States, such as New York, receiving funding under the IDEA, must provide all disabled children with a FAPE.[3] 20 U.S.C. § 1412(a)(1). School districts are required to create an IEP for each disabled child, 20 U.S.C. § 1414(d), and that IEP, viewed prospectively, must be "reasonably calculated to enable [that] child to receive education benefits." *R.E.*, 694 F.3d 175*,* 190. Prong I was conceded at trial in plaintiffs' favor, and that trial stipulation is now final and non-appealable.

The evidentiary burden that parents must meet to satisfy Prong II "reasonably calculated" standards is somewhat less stringent and more relaxed than the Prong I standard to which a school district must adhere in offering a child a FAPE. Accordingly, parents are not necessarily barred from reimbursement where a private school and program that they choose for their handicapped child would not meet the IDEA's definition of a FAPE, had the school district recommended such placement. *See Frank G.*, 459 F.3d at 364 (*citing Carter,* 510 U.S. 7); *R.E.*, 694 F.3d at 187; *Mr. & Mrs. A., ex rel. D.A. v. New York City Dep't of Educ.*, 769 F. Supp. 2d 403, 419 (S.D.N.Y. 2011).

Where, as here, the IHO and SRO found that the "parents' unilateral placement of the student at Titus was appropriate and addressed the student's special education needs" (Ex. A, Ex.

---

[3] "A FAPE must include special education and related services tailored to meet the unique needs of a particular child, and be reasonably calculated to enable the child to receive educational benefits." *Frank G.,* 459 F.3d at 363 (internal quotation marks omitted).

B), and where, as here, defendant never appealed from that finding, this Court need not address whether R.F.'s unilateral placement is appropriate in quality or in scope. Indeed, the narrow scope of review is whether R.F.'s after school programing (ABA, SLT, and OT) was appropriate under the Burlington/Carter Prong II standard, and whether the Prong III equites favor the Plaintiff's requested relief for reimbursement of those services.

The Prong III standard holds that once the fact finder has decided in favor of the parents on the first two prongs of the *Burlington/Carter* test for reimbursement, they may then determine whether equitable circumstances support the parents' claims under prong III, and order "appropriate" relief. *See Burlington,* 471 U.S. at 374; *Still v. DeBuono*, 101 F.3d 888, 891 (2d Cir. 1996); *Mrs. C. v. Voluntown Bd. of Educ.,* 226 F.3d 60, 68 (2d Cir. 2000). As discussed further herein, the SRO failed to apply the applicable Prong III legal standard and thus, arrived at a clearly erroneous decision as a matter of law.

## STANDARD OF REVIEW

Pursuant to 20 U.S.C. § 1415(i)(2)(C), this court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C); *see M.S. v. Board of Educ.*, 231 F.3d 96, 102 (2d Cir. 2000), *cert. denied*, 532 U.S. 942 (2001). This Court thus has broad remedial powers.

In IDEA cases, district courts are supposed to give "due weight" to state administrative proceedings. *See Rowley,* 458 U.S. 176, 206 (1982); *see also Mrs. B. v. Milford Bd. of Educ.*, 103 F.3d 1114, 1120 (3d Cir. 1997). However, the "due weight" accorded to state administrative procedures "is not implicated with respect to . . . issues[s] of law . . . ," *Mrs. B.*, 103 F.3d at 1122, because "state hearing officers are not more experienced or expert than courts in interpreting

federal statutes or the federal constitution, and, therefore, deference is not warranted." *Lillbask v. State of Connecticut Dep't of Educ.*, 397 F.3d 77, 82 (2d Cir. 2005). Thus, as described below, the SRO's determinations with respect to questions of law are <u>not</u> entitled to any deference by this Court.

Furthermore, as the Second Circuit has held, a "state administrative finding does not merit deference unless it is 'reasoned and supported by the record.'" *M.H. v. New York City Dep't of Educ.,* 685 F.3d 217, 241 (2d Cir. 2012) (*quoting Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 114 (2d Cir. 2007)). Here, as in *M.H.*, the SRO's decision failed to grapple with the level of supplemental service R.F. needed in light of his deficits, and therefore, even if it did not involve a question of law, it would merit little, if any, deference. *M.H.*, 685 F.3d 217; *see also, e.g.*, *C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 837 (2d Cir. 2014); *F.O. v. New York City Dep't of Educ.*, 976 F. Supp. 2d 499 (S.D.N.Y. 2013) (SRO decision "inadequately reasoned" and therefore not entitled to deference); *B.R. ex rel. K.O. v. New York City Dep't of Educ.*, 910 F. Supp. 2d 670 (S.D.N.Y. 2012); *see also P.K. v. New York City Dep't of Educ.*, 526 Fed. Appx. 135 (2d Cir. 2013) (Summary Order). As the Second Circuit also held in *R.E.*, "[b]ecause the SRO's conclusion was against the weight of the evidence and thus flawed, deference to it is not warranted." 694 F.3d at 194; *see also C.F.*, 746 F.3d at 81-82.

It is thus well settled that the district court's review of the record and proceedings below is in no way a *pro forma*, "rubber stamp[ing]" exercise. *See Walczak v. Florida Union Free Sch. Dist.,* 142 F.3d 119, 129 (2d Cir. 1998) (*quoting Rowley,* 458 U.S. at 206, 208). *See also C.F.*, 746 F.3d at 77; *R.E.,* 694 F.3d at 184; *P.K.,* 526 Fed. Appx. 135; *B.R.*, 910 F. Supp. 2d 670. Or, as the Second Circuit explained in *R.E.*, "the deference owed to an SRO's decision depends on the

*quality* of that opinion." 694 F.3d at 189 (emphasis added); *see also C.F.*, 746 F.3d at 77; *C.L. v. New York City Dep't of Educ.*, 552 Fed. Appx. 81 (2d Cir. 2014) (Summary Order).

This appeal is in the nature of a modified *de novo* review, which requires an independent and complete review of the record.    The Court is entitled to apply a pure *de novo* approach to questions of law <u>and</u> mixed questions of law and fact.  *See Mrs. B.* 103 F.3d 1114*; see also Walczak*, 142 F.3d 119; *Knable v. Bexley City Sch. Dist.*, 238 F.3d 755, 764 (6th Cir. 2001). However, "[t]he amount of weight given to the administrative proceedings is discretionary." *Wolfe v. Taconic-Hills Cent. Sch. Dist.*, 167 F. Supp. 2d 530, 533 (N.D.N.Y. 2001).

Where, as here, the portion of the underlying SRO decision that is being appealed from is <u>not</u> supported by the evidentiary record, is expressly erroneous or less than thorough, the reviewing court need not accord much, if any, weight to the administrative fact findings. *See Evans v. Bd. of Educ.*, 930 F. Supp. 83, 93 (S.D.N.Y. 1996); *R.E.*, 694 F.3d 167.

In the instant matter, the SRO applied an erroneous and arbitrary legal standard to the Prong III equities inquiry, and, as a result, the SRO's decision is not entitled to any deference.    *Mrs. B.*, 103 F.3d at 1122.  While judicial review does not permit courts to substitute their own notions of sound "educational policy," the SRO's decision, in this case, did not turn on any genuine "educational policy" findings but rather upon:  (a) applying the wrong legal Prong III standard; (b) making erroneous legal conclusions in direct contravention of Supreme Court and Second Circuit precedent and applicable statutory requirements; (c) disregarding the severity of R.F.'s pervasive developmental disorder and the impact of his autism-related deficits upon his learning; (d) failing to grapple with the significant and uncontroverted evidence regarding R.F.'s need for *intensive* 1:1 instruction and related services, both at Titus and after-school; and (e) concluding unfairly, and contrary to the facts established in the record, that R.F.'s parents were somehow "taking

advantage" of defendant's FAPE failures.  *See, e.g., C.F.*, 746 F.3d at 77; *C.L. v. Scarsdale U.F.S.D.*, 744 F.3d 826.

## I.    The Defendant Conceded Prong I at Hearing.

Defendant conceded at trial that it *failed* to offer R.F. any appropriate program and placement for R.F.'s 2023-2024 school year.  (T. 26, 35, 206).  The Defendant failed to call a single witness or offer any evaluative information into the record regarding R.F.'s educational and developmental needs, and how such needs could be addressed by the DOE's continuum of services.  Accordingly, the Prong I adjudication in plaintiffs' favor is long since final and non-appealable.

## II.    Plaintiffs Met Their Prong II Burden.

Much like the analysis as to Prong I, the appropriateness of a parents' unilateral program turns on a <u>prospective</u> analysis as to whether the program is "reasonably calculated to enable the child to receive educational benefits."  *Frank G.*, 459 F.3d at 364 (quoting *Rowley*, 458 U.S. at 207, 102 S.Ct. 3034); *R.E.*, 694 F.3d at 185-86.  The courts must look to whether the private program "provides education instruction *specifically* designed to meet the *unique* needs of a handicapped child."  *Gagliardo*, 489 F.3d at 115 (emphasis in original); *see also E.S. ex rel. B.S. v. Katonah-Lewisboro Sch. Dist.*, 742 F. Supp. 2d 417, 444 (S.D.N.Y. 2010).

The SRO did not expressly rule whether R.F.'s supplemental programming met this prong II standard. Instead the, the SRO agreed with Plaintiff's counsel in finding that the IHO's determination regarding the nature of R.F.'s home services, whether they were for the maximization and generalization of skills, should be determined under Prong III equitable considerations. Ex. A, pg. 8. Defendant never argued nor appealed from this core finding and never presented testimony or documentary evidence at the administrative level, arguing that R.F.'s

supplemental services failed to meet the Prong II burden. Therefore, it is final and non-appealable as to defendant. Accordingly, this Court need not address the Prong II test for *Burlington/Carter* reimbursement.

### III.    The SRO Misapplied Prong III and this Court Should Find that R.F.'s Parents amply Met the Controlling Prong III Standard for Full Reimbursement for R.F.'s Afterschool Services.

The Prong III analysis goes primarily to parent cooperation and good faith in the IEP development process. Where, as here, parents cooperated with the district, "participated at … [the] CSE meeting," "visited proposed placements," and gave the district timely notice before enrolling the child in the private program, Prong III is satisfied. *Mr. & Mrs. A., ex rel D.A. v. New York City Dep't of Educ.*, 769 F. Supp. 2d 403, 419 (S.D.N.Y. 2011); *B.R. v. New York City Dep't of Educ.*, 910 F. Supp. 2d 670 (S.D.N.Y. 2012); *see also R.K. v. N.Y.C. Dep't of Educ.* 2011 U.S. Dist. LEXIS 32248, 2011 WL 1131492, at *26-27, *aff'd*, *R.E.,* 694 F.3d 167 ("Plaintiffs acted reasonably under the circumstances working with the school district in good faith and keeping the school district informed of their concerns. Absent further evidence that the Parents never intended to seek a public school placement, the Court declines to infer bad faith on the part of the Parents"). Accordingly, funding for a parent-chosen private program may be denied where parents have demonstrably failed to cooperate with a school district or otherwise frustrated a school district's attempt to offer a FAPE. *See Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 246-47 (2009).

Furthermore, factors that may warrant a reduction in tuition under equitable considerations is whether the frequency of the services or the rate for the services were excessive (*see E.M.*, 758 F.3d at 461 [noting that whether the amount of the private school tuition was reasonable is one factor relevant to equitable considerations]). The IHO may consider evidence regarding whether the rate charged by a private agency was unreasonable or regarding any segregable costs charged

by the private agency that exceeds the level that the student required to receive a FAPE (*see L.K. v. New York City Dep't of Educ.*, 2016 WL 899321, at *7 (S.D.N.Y. Mar. 1, 2016), affd in part, 674 Fed. App'x 100).

Here, there was <u>no</u> evidence or finding by the SRO that R.F.'s parents were uncooperative with defendant. Moreover, the administrative record is devoid of any testimony by the defendant, IHO, and SRO showing that the frequency of R.F.'s afterschool services or the hourly rate for those services were unreasonably excessive. What is shown in the record is R.F.'s parent's cooperation with the defendant DOE leading up to the 2023-2024 school, the DOE's failure to provide a FAPE for R.F.'s 2023-2024 school year, and, most notably, that <u>all of R.F.'s services and programs in place were consistent with the only evaluative information available to the record, which the plaintiffs provided</u>.

The IHO and SRO failed to consider and give proper weight to evidence that showed R.F.'s need for after-school services and the progress he has made and continues to make from such services. Such documents included R.F.'s most recent Neuropsychological Evaluation from 2021 (Ex. P-D), his ABA progress from May 2023 (Ex. P-O), his Titus School year report from June 2023 (Ex. P-M), and previous reports from his afterschool services providers (Ex. P-D and P-E). Each of these documents was accepted into evidence without objection from the DOE. The IHO, however, ruled in her decision that these reports were irrelevant since they were not made during the 2023-2024 School Year. (Ex. B at 6). The SRO failed to address Plaintiffs' argument regarding the relevance of these evaluative documents. Plaintiffs maintain that these documents are relevant in showing R.F.'s educational and clinical history---matters pertinent to the "reasonably calculated" test.

**a.  R.F.'s Unique Severity Requires He Receive After School Services.**

"The educational program of a handicapped child, particularly a severely and profoundly handicapped child . . . is very different from that of a non-handicapped child."  *DeLeon v. Susquehanna Community School Dist.*, 747 F.2d 149, 153 (3d Cir. 1984).

In *Polk v. Central Susquehanna Intermediate Unit 16*, the Court noted that:

> "This court recently has had occasion to interpret and apply the *Rowley* standard in the context of a severely impaired child.  In *Board of Education of East Windsor Regional School District v. Diamond*, 808 F. 2d 987, 991 (3d Cir. 1986), we expressly rejected the argument that when the Supreme Court in *Rowley* referred to "some benefit," it meant any benefit at all ... But *Rowley* makes it perfectly clear that the Act requires a plan of instruction under which educational *progress* is likely."

853 F.2d at 183 (emphasis added).

A key concern and primary justification for the Education for All Handicapped Children ("EHA" – the predecessor act to the IDEA) lay in the important goal of fostering self-sufficiency in handicapped children.  Congress did so for two reasons.  First, Congress advocated dignity for handicapped children.   Second, Congress stressed the long-term financial savings of early education and assistance for handicapped children.  "A chief selling point of the Act was that although it is penny dear, it is pound wise – the expensive individualized assistance early in life, geared toward teaching basic life skills and self-sufficiency, eventually redounds to the benefit of the public fisc as these children grow to become productive citizens.  *See* H. Rep. No. 332, at 11 ("with proper educational services, many of these handicapped children would be able to become productive citizens contributing to society instead of being left to remain burdens on society"); 121 Cong. Rec. 19492 (1975) (remarks of Senator Williams); *id.* at 19505 (remarks of Senator Beall).

17

The underlying record is replete with evidence supporting R.F.'s *need* for home and community-based services in addition to a school-based component. Further, despite having the burden of production and persuasion, defendant failed to produce any documentary evidence or call any witnesses regarding R.F.'s present levels of performance and the extent of his deficits. Plaintiffs, on the other hand, presented documentary evidence and testimony the severity of R.F.'s deficits, and his needs for services in the home and community. Defendant never once disputed R.F.'s severity.

R.F. was diagnosed with autism in 2016 when he was 2 years old. Ex. P-Y; Ex. P-D, at 49. R.F. received this diagnosis after he stopped speaking and was not meeting his developmental milestones. Ex. P-Y. After being diagnosed with autism, R.F. began SLT, OT, PT, Feeding Therapy, and in-home ABA through Early Intervention. *Id*. R.F. was also diagnosed with a PTEN Genetic Mutation. *Id*; Ex. P-D, at 49.

As the administrative record shows, R.F. has a complex profile, as he has areas of typical cognitive potential alongside deficits related to communication, attention, socialization, adaptive skills, and self-regulation. Ex. P-D, at pg. 57-58, P-Y. For the 2023-2024 school year, R.F. continued to display multiple, interfering behaviors that inhibited his ability to engage in the classroom, stay on task for assignments, follow his instructors' directions, and interact with his peers. Ex. P-U. R.F.s interfering behaviors included maladaptive, inappropriate physical contact, non-contextual vocalizations, and task refusal. Ex. P-U; Tr. 136:19 – Tr. 137:7. Additionally, R.F. engaged in loud vocalizations to gain access to preferred items, activities, or attention. Ex. P-Y. R.F. also experienced high anxiety that negatively impacts his functioning when asked to complete non-preferred activities or when tasks are perceived as hard. Ex. P-D, at pg. 14-15, 57.

R.F. significantly struggles with communication, especially with pragmatic, expressive,

and receptive language. Ex. P-W; Tr. 69. As such, R.F. had difficulty understanding and processing what is being asked of him, as he responds to demands with linguistic errors and has difficulty following instructions. Ex. P-W. He also struggled with social behavior, specifically with navigating social situations, regulating his attention and energy levels, and functional communication. Ex. P-Y.

R.F. also displayed poor fine motor skills and requires visual cues and prompts to complete tasks and maintain attention. Ex. P-S, P-X. He struggles to independently write all letters and numbers, as well as to maintain a sustained grasp of items. Ex. P-S. Further, R.F. needed support with activities of daily living skills, including unfastening buttons, putting on his shoes and socks, brushing his teeth, combing his hair, toileting, and washing his hands. Tr. 117:13; Tr. 118:16-24.

Moreover, R.F. struggled with sensory issues. Tr. 82:6-12; P-X, at para. 3. For example, R.F. demonstrated decreased interoceptive awareness that impacts his body temperature, hunger/thirst, toileting needs, and emotional regulation. He often overheats and needs prompting to use the bathroom and to determine thirst/hunger cues, satiety, and emotional regulation needs. He demonstrates significant safety and body awareness challenges and, as noted above, can engage in unsafe behaviors and requires close supervision and skilled sensory integrative therapy support Ex. P-X, at para 3. He also had poor spatial awareness, delayed motor planning, and poor balance. *Id*.

According to R.F.'s neuropsychological evaluation administered by Dr. David H. Salsberg, due to R.F.'s complex needs, he required a small, structured, and supportive class and school setting with one-to-one instructional support throughout the school day. Ex. P-D, at pg. 58. He required opportunities for direct instruction utilizing ABA to address his difficulties and

make him available for learning. *Id*. R.F. also needed ABA services at home and in the community to help R.F. learn how to carryover skills learned at school, safely navigate his environment, promote independence, and develop his attention, self-regulation, and communication skills. *Id*.

H.F. testified by way of an affidavit to R.F.'s need for supplemental services in SLT, OT, and ABA to address her son's extensive deficits. Ex. P-Y, at para. 44. As stated by R.F.'s providers, and his 2021 neuropsychological evaluation, afterschool services are necessary for R.F. due to the extent of his deficits. In other words, R.F.'s deficits mean he needs more time to master basic skills and concepts for his academics, related services, and ADL skills. H.F. further testified that R.F. continues progressing with his Titus program. Tr. 185-186.

### b. The SRO Erred in Determining R.F.'s Afterschool Services were for the Purposes of Generalization and Maximization.

Second Circuit authority has held that a case by case analysis is needed in determining whether the equities favor reimbursement of a student's after school program. *See, L.K.*, 674 F. App'x at 102. In *L.K.*, the Second Circuit remanded the matter to the administrative tribunal to determine the extent to which the student's afterschool services were appropriate and necessary in conjunction with his unilateral placement. *Id.* There, while the Second Circuit did not provide a blanket award for the Parents' requested after school services, it did hold the determination of such a reward required a case by case analysis of the extent of the student's need for such services, and the level of services required to meet that student's need. *Id.*

Here, rather than determining what level of after-school services were needed to meet R.F.'s educational needs under the IDEA, the IHO and SRO took an all-or-nothing approach to these services. The administrative record, as discussed above, contained ample testimony and documentary evidence regarding R.F.'s need for additional time after school to address his deficits

in activities of daily living (ADL), speech and language, sensory processing, motor skills, and socialization. Instead of giving proper credit to R.F.'s need for such services and the benefit provided by these services, the SRO ruled that such benefit could be credited to the student's attendance at Titus. Ex. A, p. 14. The SRO's finding should not be given due weight, as the SRO itself admitted that, "It is difficult to parse out whether at Titus met the student's needs in the absence of the after-school services because the after-school services were running simultaneously with the student's programming at Titus…" Ex. A, pg. 13.

Further, while the SRO seemingly believed that the Pong III equites required the plaintiffs to show that such meaningful progress could not have been made without these afterschool services, they failed to cite any controlling authority creating such a burden. Further, in holding such a burden, the SRO neglected to give proper weight to R.F.'s neuropsychological report and evaluative information provided by his private service providers, discussing R.F.'s need for such services. Ex. P-D, at 49. On the other hand, the defendant offered no evidence to suggest why it should be assumed that that same degree of measured progress would have been observed if R.F.'s home-based program had not been included.

Regarding generalization, the testimony provided by R.F.'s home ABA, OT, and SLT providers, as well as documented progress reports (*see*, Ex. P-O, P-Q, P-S) and evaluations (Ex. P-D) show that these home services served the purpose of addressing his extensive deficits so that he can keep pace with his program at the Titus school. While some aspects of R.F.'s home programming may have aimed to ensure Rex could utilize learned skills across various contexts, *generalization* was not the sole or primary reason R.F. received these services. As the SRO has held, the fact that home-based services (including ABA therapy) address a student's ADL skills does not, without more, show that the services were for the sole purpose of generalizing skills.

(*Application of a Student with a Disability,* Appeal No. 23-237).  In its decision, the SRO points

to portions of the administrative record were R.F.'s services providers testified or reported that

he was working on ADL skills, the maintenance of skills, and ensuring such skills could be

utilized across settings, the SRO failed to appreciate that such attention was needed for R.F. to

make progress in school. *See*, Ex. P-W and P-V.

Indeed, while the SRO cited prior case authority that held, "the IDEA does not require

school district, as a matter of course, to design educational programs to address a student's

difficulties in generalizing skills to other settings outside of the school environment, particularly

where it is determined that the student is otherwise likely to make progress, at least in the

classroom setting…" (Ex. A, at 11), it failed to consider and appreciate the fact that nothing in

the record established that R.F. was likely to make progress at Titus without his afterschool

services. The record before the IHO was replete with testimony from H.F. and R.F.'s providers

regarding the slow and steady progress he had made over the years receiving afterschool

programing. Ex. P-Y, P-V, P-W, P-X; *see also* Ex. P-D, P-O, P-Q, and P-S.

Furthermore, the SRO misapplied the "generalization standard" it cited from cases like

*L.K., 2016 WL 899321, at *8-*10* (S.D.N.Y. Mar. I, 2016). In *L.K.*, the district court did not

apply, or advocate for, a blanket rule barring generalization as a basis for a student's

programming. Rather, the district court observed a nuanced approached in determining whether

generalization, at times, is needed for a student to receive an educational benefit. *Id*. In citing

*Thompson R2-J Sch. Dist. v. Luke P., ex rel. Jeff P.*, 540 F.3d 1143, 1152 (10th Cir. 2008), the

District Court in *L.K.* noted:

> "the Supreme Court has ......  [*28] cautioned against 'establish[ing] any one test
> for determining the adequacy of educational benefits conferred upon all children
> covered by the [IDEA].'" Id. (quoting *Rowley*, 458 U.S. at 202). Accordingly, the
> court noted "that at least one other court has suggested that in some instances

difficulty generalizing skills may be so severe that it prevents a student from receiving any educational benefit." Id. (emphasis in original) (citing Gonzalez v. *Puerto Rico Dep't of Educ.*, 254 F.3d 350, 353 (1st Cir. 2001)). The Court agrees that, if a student's difficulty in generalizing skills prevents him from making the progress required under the IDEA—i.e., if it prevents the student from making more than "trivial" progress—then a school district would have to offer services that seek to improve generalization in order to provide a FAPE."

*L.K., 2016 WL 899321,* at 28

What must also be noted is the SRO's failure to address the educational benefit discussed in its cited cases like *L.K.* and *Thompson*. Such cases utilized the "some benefit" standard in determining the benefit owed to a student under the IDEA and in addressing the value and necessity of skill generalization. The Supreme Court replaced the inadequate "some benefit" and "more than de minimis" standards in their 2017 unanimous and landmark decision *Endrew F.*, with the more appropriate standard, whether the student's academic program and goals are "appropriately ambitious in light of [their] circumstances." *Endrew F. v. Douglas County Sch. Dist. RE-1*, 580 U.S. 386, 388 (2017). .

IV. **The SRO Erred in Affirming the IHO's Denial for Funding for an Updated Neuropsychological Evaluation.**

In its decision dismissing Plaintiff's appeal, the SRO also ruled that the administrative record did not support funding for R.F.'s updated neuropsychological evaluation. Ex. A pg. 14-16. In doing so, the SRO relied on previous SRO and Federal Court authority regarding a parent's request for an Independent Educational Evaluation. *Id*. Specifically, the SRO construed that the record showed the Parent's first request for an "IEE" was in their Demand for Due Process and thus did not afford plaintiffs an opportunity to "engage with the parent on the request for an IEE at public expense outside of due process litigation." *Id.*, at 15.

In reaching this conclusion, the SRO failed to appreciate and grapple with the facts of this case. Parents have the right to have an IEE conducted at public expense if the parent expresses

disagreement with an evaluation conducted by the district and requests that an IEE be conducted at public expense. 34 CFR 300.502[b]; 8 NYCRR 200.5[g][l]. In R.F.'s case, there was no DOE evaluation for the R.F.'s parent to disagree with. As alleged by Parents' demand for Due Process, the defendant failed to evaluate R.F. in preparation for his 2023-2024 school year and failed to conduct the statutorily mandated Triennial Evaluation. Ex. A; 20 U.S.C. § 1414(a)(2); *see also* New York Education Law Section 200.4(b)(4). With no DOE evaluation to disagree with, R.F.'s parents were not able to avail themselves to the IEE process cited by the SRO.

Under the IDEA, courts can "grant such relief as the court determines is appropriate," limited only by the restriction that "the relief is to be appropriate in light of the purpose of the Act." *Doe v. East Lyme Bd. Of Educ.*, 790 F.3d 440, 454 (2d Cir. 2015) (citation omitted). Equitable considerations are relevant in fashioning relief, and the court has broad discretion in doing so. *Carter*, 510 U.S. 16 (1993). For R.F.'s case, the controlling law does not provide a straightforward remedy for when the DOE fails to evaluate a student altogether. What is clear is the defendant failed to evaluate R.F., leaving R.F.'s parents with no DOE-conducted evaluation to disagree with, as required for an IEE request. The SRO disregarded this pertinent fact in affirming the IHO's refusal to fund an updated Neuropsychological Evaluation for R.F. As discussed above, plaintiffs provided the only evaluative information for the hearing, and were wrongly faulted by the IHO for failing to offer recent evaluative reports. Ex. B. Plaintiffs contend it was within the IHO's broad discretion to correct this inequity and provide funding for updated evaluative information that she faulted the plaintiffs for not providing. Ex. B, pg. 6.

## CONCLUSION

24

Accordingly, this Court, while maintaining R.F.'s existing pendency entitlements, upon its modified *de novo* review, should:

1. declare that the SRO applied a clearly erroneous and retrospective Prong III standard to arbitrarily limit plaintiffs' reimbursement relief;

2. declare that, when applying the facts of the underlying record to the appropriate Prong III standard that the Prong III, equities favor the plaintiffs;

3. award reimbursement for R.F.'s after school home and community-based services;

4. declare plaintiffs to be the "substantially prevailing" parties;

5. grant leave to plaintiffs to submit a fee application covering the reasonable fees and other recoverable costs, both at the administrative level and for this action, pursuant to the express fee-shifting provisions of the Act; and

6. grant plaintiffs such other, further and different relief as may be just under the circumstances and this Court's power, pursuant to 20 U.S.C. § 1415, *et seq.*

Dated: September 16, 2024
New York, New York

Gary S. Mayerson (GSM 8413)
Mayerson & Associates
Attorneys for Plaintiffs-Appellants
200 West 41st Street, 17th Floor
New York, New York 10018
(212) 265-7200
www.mayerslaw.com
gary@mayerslaw.com

25