USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/22/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

R. F., *by his parents, H.F. and C.F.*,

 Plaintiffs,

-against-

NEW YORK CITY DEPARTMENT OF
EDUCATION,

 Defendant.

---

1:24-cv-03117-MKV

**OPINION AND ORDER DENYING
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT**

MARY KAY VYSKOCIL, United States District Judge:

 Plaintiffs are parents who commenced this action on behalf of their minor child, who has been classified as a student with a disability pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq*. The parties on each side have cross-moved for summary judgment. Plaintiffs seek an order reversing a portion of the decision by a State Review Officer ("SRO"), (1) finding that Plaintiffs are owed (a) reimbursement for R.F.'s after-school home and community-based services and (b) an award for an updated Neuropsychological Evaluation and Report and (2) declaring that plaintiffs are the "substantially prevailing" parties in this action and may submit a fee application for purposes of statutory attorneys' fees and other recoverable costs. Defendant seeks summary judgment in its favor, affirming the SRO's decision and dismissing Plaintiffs' Complaint. For the reasons set forth below, Plaintiffs' motion for summary judgment is DENIED, and Defendant's motion for summary judgment is GRANTED.

## BACKGROUND

### I.  IDEA Statutory Framework

 The IDEA is designed "to ensure that all children with disabilities have available to them a free appropriate public education [('FAPE')] that emphasizes special education and related services designed to meet their unique needs." *See* 20 U.S.C. § 1400(d)(1)(A); *see also* 20 U.S.C.

§ 1412(a)(1)(A).  To provide a FAPE to each student with a disability, a school district must develop, review, and revise an "individualized education program" ("IEP") for each eligible child. *See* 20 U.S.C. § 1412(a)(4); *Killoran v. Westhampton Beach UFSD*, No. 21-2647, 2023 WL 4503151, at *2 (2d Cir. July 13, 2023).  An IEP must be "reasonably calculated to enable the child to receive educational benefits." *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 525 (2d Cir. 2020) (quoting *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 151 (2d Cir. 2014)).

The IDEA also requires states to establish an administrative review process for parents dissatisfied with their child's education and seek and to provide an opportunity to challenge their child's IEP.  *See Ventura de Paulino*, 959 F.3d at 525–26; *see also* 20 U.S.C. § 1415(b)(6)(A) (a parent may request administrative review "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child.").  The State of New York has implemented a two-tier system of administrative review, under which dissatisfied parents may (1) file an administrative due process complaint and request a hearing before an impartial hearing officer ("IHO") and (2) later appeal the IHO's decision to a state review officer ("SRO").  *See Ventura de Paulino*, 959 F.3d at 526 (citing *Mackey ex rel. Thomas M. v. Bd. of Educ. For Arlington Cent. Sch. Dist.*, 386 F.3d 158, 160 (2d Cir. 2004), *supplemented sub nom. Mackey v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 112 F. App'x 89 (2d Cir. 2004)).  Generally, either "party aggrieved" by the findings of an SRO "shall have the right to bring a civil action" in either state or federal court.  *See* 20 U.S.C. § 1415(i)(2)(A); *see also Ventura de Paulino*, 959 F.3d at 526 (citing *Mackey*, 386 F.3d at 160).

Parents who are dissatisfied with a school district's recommendations for their child for a given school year may unilaterally place their child in a private school and seek retroactive tuition reimbursement from the school district.  *See Bd. of Educ. of Yorktown Cent. Sch. Dist. v. C.S.*, 990

F.3d 152, 159 (2d Cir. 2021) (citing 20 U.S.C. § 1412(a)(10)(C)(ii)).  However, parents who make

this unilateral decision "do so . . . at their own financial risk."  *See Mendez v. Banks*, 65 F.4th 56,

59 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 559, 217 L. Ed. 2d 298 (2024) (quoting *Ventura de

Paulino*, 959 F.3d at 526).   To determine whether reimbursement for unilateral placement is

appropriate, courts apply the three-part *Burlington-Carter*[1] test: (1) whether the school district's

proposed plan will provide the child with FAPE; (2) whether the unilateral private placement is

"appropriate to the child's needs"; and (3) whether "the equities" support reimbursement.  *See

Ferreira v. Aviles-Ramos*, 120 F.4th 323, 329 (2d Cir. 2024).   "The first two prongs of the test

generally constitute a binary inquiry that determines whether or not relief is warranted, while the

third enables a court to determine the appropriate amount of reimbursement, if any."  *See A.P. v.

N.Y.C. Dep't of Educ.*, No. 22-2636, 2024 WL 763386, at *2 (2d Cir. Feb. 26, 2024) (citing *Forest

Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 246–47 (2009) ("Parents are entitled to reimbursement *only*

if a federal court concludes both that the public placement violated IDEA and the private school

placement was proper under the Act. And even then courts retain discretion to reduce the amount

of a reimbursement award if the equities so warrant." (cleaned up and emphasis in the original))).

The school district bears the initial burden of establishing the validity of the IEP but "[i]f the board

fails to carry this burden, the parents bear the burden of establishing the appropriateness of their

private placement and that the equities favor them."  *See R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d

167, 184–85 (2d Cir. 2012); *Yeger v. E. Ramapo Cent. Sch. Dist.*, No. 21 CV 6822 (VB), 2022

WL 16745811, at *10 (S.D.N.Y. Nov. 7, 2022).

---

[1] The *Burlington-Carter* test was outlined by the Supreme Court in two separate decisions: *School Committee of Town
of Burlington v. Department of Education of Massachusetts*, 471 U.S. 359 (1985), and *Florence County School District
Four v. Carter*, 510 U.S. 7 (1993).

## II.    Factual Background[2]

R.F. is now a ten-year-old boy diagnosed with Autism, PTEN Genetic Mutation, and global developmental delays.  Def. Rp. 56.1 ¶ 1.  H.F. and C.F. ("Plaintiffs") are R.F.'s parents.  Def. Rp. 56.1 ¶ 2.  R.F. has presented with pronounced and severe deficits, including in academics and pre-academics, communication, attention, behaviors, sensory processing including auditory processing and oral sensory processing, social, emotional, gross motor, fine motor, oral motor planning, visual perceptual skills, and self-help skills, among others.  Def. Rp. 56.1 ¶ 4.[3]  R.F. has also been found to have interfering behaviors including maladaptive, inappropriate physical contact and protest behaviors, such as elopement, non-contextual vocalization, and task refusal.[4]  Ex. P-U, at 13.  Def. Rp. 56.1 ¶ 5.

In anticipation of the 2023 to 2024 school year, R.F.'s mother, attended an IEP meeting on January 17, 2023.  Def. Rp. 56.1 ¶ 6.  Plaintiffs attended every IEP meeting and cooperated with defendant.  Def. Rp. 56.1 ¶ 51.  In June 2023, Plaintiffs wrote to DOE's Committee on Special Education ("CSE") to explain their concerns about the educational program that the DOE

---

[2] The following facts are drawn from the Parties' various Local Rule 56.1 statements, including Defendants' Counter Statement to Plaintiffs' Local Rule 56.1 Statement [ECF No. 25 ("Def. Rp. 56.1")] and Plaintiffs' Counter Statement to Defendants' Local Rule 56.1 Statement [ECF No. 30 ("Pl. Rp. 56.1")].  The Court refers to Plaintiffs' administrative hearing exhibits as they appear in the administrative record, beginning with "P–".  All facts are undisputed unless otherwise stated.

[3] Defendant does not dispute the truth of these facts. It states in response to these facts that some of them are premised on portions of Plaintiff's exhibits which the IHO did not consider because they were "outdated." Def. Rp. 56.1 ¶ 4 (citing Exhibits P–E and P–O and parts of Exhibits P–D and P–M).  The SRO Decision separately cited to Exhibit P–E, indicating that it had been reviewed and included in the record.  *See* SRO Decision at 12. However, the SRO later noted that the IHO discounted Exhibits P–D, P–M, P–O, P–Q, and P–S, those exhibits "are included in the hearing record and they have been reviewed on appeal."  SRO Decision at 9 n.6.  Defendant points to no authority suggesting that this Court may not consider facts which the SRO has included in the hearing record. Moreover, the IHO Decision quoted the findings of Exhibit P–M extensively, noting that it found that R.F.  "has a history of engaging in high rates of off-task behavior; emotional dysregulation and physical dysregulation."  IHO Decision at 5.  The same report stated that R.F. required a "small class size with a low student to staff ratio to participate in instruction" and "significant support to navigate his environment and demonstrate executive functioning skills." *Id.* Accordingly, the Court finds these facts not reasonably in dispute.

[4] The DOE disputes these facts only insofar as the exhibit supporting the facts was disregarded by the IHO.  Def. Rp. 56.1 ¶ 5.  The Court finds these facts not in fact disputed for the same reasons explained in note 3. *See supra* n.3

recommended at the IEP meeting.  Def. Rp. 56.1 ¶ 14.  The letter also informed the CSE that

Plaintiffs had not yet received a school location for the 2023-2024 school year.  Def. Rp. 56.1 ¶

14. The letter further timely notified the CSE that in the absence of an appropriate IEP program

and placement, R.F. would continue to attend the private Titus School ("Titus") in the upcoming

school year, and that they would seek reimbursement of R.F.'s tuition at Titus, as well as for his

after-school services.  Def. Rp. 56.1 ¶¶ 16, 52, 53[5]; Pl. Rp. 56.1 ¶ 2.  Shortly thereafter, R.F.'s

mother received a school location letter designating R.F. for 75M811: P.S. M811—Mickey Mantle

School.  Def. Rp. 56.1 ¶ 17.

Plaintiffs filed a demand for due process in June 2023 and amended their demand in August

2023.  Def. Rp. 56.1 ¶ 23; Pl. Rp. 56.1 ¶ 3.  The initial due process demand requested

reimbursement of tuition and costs for Titus School, the cost of several after-school programs, and

transportation to and from school.  *See* P–A at 11.  The amended due process demand requested

the same and added a request for funding of an updated neuropsychological evaluation.  *See* P-B

at 11.  In both of their due process filings, R.F.'s parents expressly invited defendant to a resolution

meeting to address and cure the alleged violations.  Def. Rp. 56.1 ¶ 24.  Despite Plaintiffs' request,

DOE never made a written offer of settlement prior to the IHO hearing, and Plaintiffs continued

to litigate the case.  Def. Rp. 56.1 ¶ 25.

On or about August 2, 2023, IHO Michelle Babbitt issued a Prehearing Conference

Summary and Order ("PHC Summary and Order").  Def. Rp. 56.1 ¶ 27.  The PHC Summary and

Order required the parties to disclose their witnesses and documentary evidence to each other and

---

[5] DOE does not dispute the fact that the letter timely notified the CSE that, in the absence of an appropriate IEP program and placement, R.F. would continue to attend the Titus School in the 2023-2024 school year, and that Plaintiffs would seek reimbursement of R.F.'s Titus tuition and payment for his after-school services.  Def. Rp. 56.1 ¶ 16.  Instead, in its counterstatement to these facts, DOE cites to findings of the IHO Decision regarding the necessity and efficacy of R.F.'s after-school services.  Def. Rp. 56.1 ¶ 16.  These findings have nothing to do with the fact of statements contained in Plaintiffs' letter and accordingly, these facts are not in dispute.

the IHO five business days before the scheduled hearing.  Def. Rp. 56.1 ¶ 28.  The IHO's order directed the parties to disclose their intent to cross-examine any disclosed witnesses two days before the scheduled hearing date.  Def. Rp. 56.1 ¶ 29.  Despite the IHO's PHC Summary and Order, the DOE did not timely notify Plaintiffs' counsel of its intent to cross-examine any of their witnesses. Def. Rp. 56.1 ¶ 40.[6]  Therefore, the IHO precluded DOE from cross-examining any of Plaintiffs' witnesses during the impartial hearing.  *See* IHO Hearing Transcript ("Tr.") 28–29; IHO Decision at 4.  The IHO explained to the parties that she would ask "questions for clarification and completion [of the record]" and notified DOE that it would be permitted to ask questions that "emanate solely from that limited subject matter."  Tr. 29; IHO Decision at 4.

During the October 2024 hearing, DOE did not enter any evidence into the record or call any witnesses and conceded that it had failed to provide R.F. with a FAPE, thereby conceding the first prong of the three-prong *Burlington/Carter* test for reimbursement relief.  Def. Rp. 56.1 ¶¶ 37, 38.[7]  DOE also conceded that there were no equitable considerations against the full reimbursement relief requested by the plaintiffs.  Def. Rp. 56.1 ¶ 39.  After the hearing, the DOE again confirmed that it conceded the first and third prongs of the test for reimbursement relief.  Def. Rp. 56.1 ¶ 55.  The IHO ordered the parties to submit their post-hearing briefs discussing only the second prong of the *Burlington/Carter* test.  Def. Rp. 56.1 ¶ 56.

After briefing, IHO Babbitt issued her Findings of Fact and Decision ("FOFD" or "IHO Decision"), which found that the DOE had conceded it failed to offer R.F. an FAPE for the 2023–2024 school year; that Titus was an appropriate placement for R.F.; and that there were no

---

[6] Defendant disputed this statement only to the extend Plaintiff's use of the word " 'failed' suggests conduct in anyway improper under the circumstances."  Def. Rp. 56.1 ¶ 40.  The Court does not use or consider Plaintiff's offending wording.

[7] Defendant disputed this statement only "insofar as Plaintiff's use of emphasis suggests conduct in anyway improper under the circumstances."  Def. Rp. 56.1 ¶ 38.  The Court thus does not include Plaintiff's use of underlining or italics and does not consider it.

equitable considerations against awarding R.F.'s parent's full tuition reimbursement.  Def. Rp. 56.1 ¶ 58; IHO Decision at 13–16.  Accordingly, IHO Babbitt granted R.F.'s request for tuition reimbursement in the amount of $132,000 for R.F.'s unilateral placement at Titus School.  Pl. Rp. 56.1 ¶¶ 6, 72; IHO Decision at 12.

However, IHO Babbitt denied reimbursement for R.F.'s after-school services of applied behavioral analysis ("ABA"), speech-language therapy ("SLT"), and occupational therapy ("OT"). *See* Def. Rp. 56.1 ¶ 59; Pl. Rp. 56.1 ¶ 5; IHO Decision at 16–20; *see also* SRO Decision at 1 (defining ABA, SLT, and OT).  In assessing the second prong under the *Burlington/Carter* test, IHO Babbitt held that the IDEA does not require school districts to design educational programs to address a student's difficulties in generalizing skills to after-school environments when "the student is otherwise likely to make progress in the classroom," nor does it require schools to provide an education that "maximizes the student's potential."  IHO Decision at 17.  Accordingly, IHO Babbitt reasoned that Plaintiffs failed to meet their burden to show that "absent these [after-school] services, the [s]tudent would not progress in the Private School."  *See* Def. Rp. 56.1 ¶ 60; IHO Decision at 17–18.  IHO Babbitt did not assess after-school services in her analysis of the equities, under prong three.  *See* IHO Decision at 20–21.  IHO Babbitt denied R.F.'s request for funding for an updated neuropsychological evaluation without providing any analysis.  *See* IHO Decision at 21 ("[A]ny relief not specifically discussed in this decision is denied, and all the Parent's remaining claims not discussed herein are dismissed.").

On or about January 16, 2024, Plaintiffs filed a limited appeal of the IHO Decision to the SRO seeking only a reversal of the IHO's decision regarding R.F.'s after-school services and funding for an updated neuropsychological evaluation.  Def. Rp. 56.1 ¶ 61.  On appeal, SRO Krolak noted that it was difficult to determine whether Titus met the student's needs in the absence of the after-school services because the after-school services were running simultaneously with

the student's programming at Titus.  Def. Rp. 56.1 ¶ 63[8]; SRO Decision at 13-14.  However, SRO Krolak declined to disturb the IHO order, finding that it "was a rational and well-thought out determination based on [IHO Babbitt's] careful reading of the due process complaint notices and consideration of the evidence in the hearing record."  Def. Rp. 56.1 ¶ 11; SRO Decision at 16.

SRO Krolak analyzed the question of whether to award reimbursement for R.F.'s after-school services under the third prong of the *Burlington/Carter* standard by weighing equitable considerations.  SRO Decision at 9–14; *see also* Def. Rp. 56.1 ¶ 63.  He held that one of the factors that may warrant a reduction in reimbursement when considering the equities is whether the frequency of the services or the rate for the services was excessive.  Def. Rp. 56.1 ¶ 63; SRO Decision at 9.  SRO Krolak further found, as did IHO Babbitt, that several courts have held that the IDEA does not require school districts to design educational programs to address a student's difficulties in generalizing skills to other settings outside of the school environment, particularly where it is determined that the student is otherwise likely to make progress in the classroom setting.  Def. Rp. 56.1 ¶ 63; SRO Decision at 11.  He also specifically noted several inconsistencies in the record made by Plaintiffs, regarding whether after-school services were necessary for R.F. to make progress in the classroom.  *See* SRO Decision at 12–13.  SRO Krolak specifically noted that R.F.'s mother testified that Titus met the student's needs during the time that R.F. was in school, but also testified that the after-school services were necessary for R.F. to make meaningful progress.  Def. Rp. 56.1 ¶ 63; SRO Decision at 13.

In denying the Plaintiffs' request for funding of an updated neuropsychological exam, SRO Krolak found that some SROs have permitted parents to request a district-funded independent

---

[8] Defendant does not dispute the statements made in Def. Rp. 56.1 ¶ 63 "insofar as paragraph 63 appears only to contain quotations from the SRO decision underlying the instant matter."  The Court has confirmed that the included facts herein accurately reflect the findings of the SRO Decision.

educational evaluation ("IEE")[9] in a due process complaint in the first instance. However, SRO Krolak also noted that several recent SRO opinions have instead found that parents were required to raise the request with the district prior to including it in a due process complaint. *See* Def. Rp. 56.1 ¶ 63; SRO Decision at 15.

SRO Krolak affirmed the IHO Decision on both issues on appeal. SRO Decision at 16. The SRO Decision upheld IHO Babbitt's denial of reimbursement for R.F.'s after-school services and her denial of funding for an updated neuropsychological evaluation. *See id.* at 15–16; IHO Decision at 16–21.

## PROCEDURAL HISTORY

Plaintiffs filed this action alleging that SRO Krolak's decision erred in its holdings regarding after-school services and the neuropsychological report. [ECF No. 1 ("Compl.")]. Plaintiffs now move for summary judgment seeking a ruling that:

(a)  the SRO applied an erroneous standard to limit plaintiffs' reimbursement relief for the 2023-2024 school year and, if the SRO had applied the appropriate legal test, it should have awarded Plaintiffs reimbursement for R.F.'s after-school home and community-based services;

(b)  accepts as "additional evidence" pursuant to 20 U.S.C. §1415(i)(2)(C)(ii), the Findings of Fact and Decision dated November 15 [*sic*], 2023;[10]

(c)  grants funding for an updated Neuropsychological Evaluation and Report;

---

[9] The SRO Decision defines an IEE as "an individual evaluation of a student with a disability or a student thought to have a disability, conducted by a qualified examiner who is not employed by the public agency responsible for the education of the student." *See* SRO Decision at 14; *see also* 34 C.F.R. § 300.502.

[10] The relevant Findings of Fact and Decision ("FOFD") was in fact dated November 16, 2023. [ECF No. 21-3]. The November 16, 2023 FOFD resolved Plaintiffs' due process complaint regarding the 2021-2022 school year. [ECF No. 21-3]. Nothing in the parties' 56.1 statements mention the November 16, 2023 FOFD, though it is appended to Plaintiffs' Affidavit supporting their motion for summary judgment. Def. Rp. 56.1; Pl. Rp. 56.1; [ECF No. 21-3]. Plaintiffs once mention briefly in their supporting memorandum that "in order to preserve R.F.'s educational status quo until there is a final adjudication, petitioners continue to invoke R.F.'s automatic and unconditional pendency entitlements as per IHO James McKeever's November 15 [*sic*], 2023 Decision." Pl. Mem. at 2. Plaintiffs state that "the DOE never took an appeal from IHO McKeever's November 16, 2023 Decision; accordingly, that decision is now final and non-appealable." *Id.* Plaintiffs do not request any ruling on pendency in their notice of a motion for summary judgment. *See* Pl. Mot. As the issue is never again mentioned in the parties' briefing and is not clearly before this Court on appeal, the Court does not render a decision on pendency.

(d)    declares Plaintiffs are the "substantially prevailing" parties in this action and grants leave to submit a fee application for purposes of statutory attorneys' fees and other recoverable costs at the administrative level, the SRO level, and in this action, pursuant to 20 U.S.C. § 1415(i)(3)(B); and

(e)    grants any other relief as may be just under the circumstances.

[ECF No. 19 ("Pl. Mot.")].

In support of their motion, Plaintiffs filed a Memorandum of Law [ECF No. 22 ("Pl. Mem.")] attaching the administrative record, including Plaintiffs' hearing exhibits and the IHO hearing transcript ("Tr.") [ECF No. 22-1], a Local Rule 56.1 Statement [ECF No. 20], and an affidavit attaching the March 2024 State Review Officer Krolak's Decision, [ECF No. 21-1 ("SRO Decision")], the December 2023 Impartial Hearing Officer Babbitt's Decision, [ECF No. 21-2 ("IHO Decision")], and the November 2023 Impartial Hearing Officer McKeever's Decision, [ECF No. 21-3. Defendants subsequently cross-moved for summary judgment requesting that the Court affirm the judgment of the SRO [ECF No. 26], filing a Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment and in Support of Defendants' Cross-Motion [ECF No. 27 ("Def Opp. & Mem.")], together with their Local Rule 56.1 Statement and Counter Statement to Plaintiffs' Rule 56.1 Statement [ECF No. 25]. Plaintiffs submitted a Reply Memorandum of Law in Further Support and in Opposition of Defendants' Motion [ECF No. 31 ("Pl. Reply & Opp.")] and a Counter Statement to Defendants' Rule 56.1 Statement [ECF No. 30]. Defendants also filed a Reply Memorandum of Law in Further Support of their Cross-Motion. [ECF No. 33 ("Def. Reply")]. [11]

---

[11] Plaintiffs also requested to appear for oral argument. [ECF No. 32]. Since oral argument is not needed to rule on its motion, Plaintiffs' request is denied. *See AD/SAT, Div. of Skylight, Inc. v. Assoc. Press*, 181 F.3d 216, 226 (2d Cir. 1999) (*per curiam*) (noting that "a district court's decision whether to permit oral argument rests within its discretion" (citing *Katz v. Morgenthau*, 892 F.2d 20, 22 (2d Cir. 1989)); *see also Henderson v. Lagoudis*, No. 3:12cv1688 (JBA), 2014 WL 813120, at *1 n.1 (D. Conn. Feb. 28, 2014) (denying request for oral argument because it was not necessary to decide pending motion).

**LEGAL STANDARD**

In an IDEA case, a motion for summary judgment is treated as "an appeal from an administrative determination, not a summary judgment motion." *Bd. of Educ. of Yorktown Cent. Sch. Dist. v. C.S.*, 990 F.3d 152, 165 (2d Cir. 2021) (quoting *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 226 (2d Cir. 2012)). Courts thus "engage[] in an independent review of the administrative record and make[] a determination based on a preponderance of the evidence." *Id.* (quoting *M.H.*, 685 F.3d at 240). A review of an SRO decision at summary judgment requires "an independent, but circumscribed, review, more critical than clear-error review but well short of complete de novo review." *Phillips v. Banks*, No. 23-362, 2024 WL 1208954, at *2 (2d Cir. Mar. 21, 2024) (summary order) (quoting *T.K. v. N.Y.C. Dep't of Educ.*, 810 F.3d 869, 875 (2d Cir. 2016) (cleaned up)).

Courts "must give due weight to [IDEA administrative proceedings] proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *C.S.*, 990 F.3d at 165. Conversely, on "issues of law. . . courts owe no deference to state hearing officers." *Id.* (citing *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 82 (2d Cir. 2005)).

**DISCUSSION**

On appeal, Plaintiffs allege that SRO applied erroneous legal standards, misstated facts in the record, and failed to consider the totality of the evidence when it denied funding for R.F's after-school services. Pl. Mem. at 9. Plaintiffs also argue that the SRO Decision erred in denying them funding for an updated neuropsychological evaluation because "the SRO failed to appreciate and grapple with the facts of this [c]ase" and the "controlling law does not provide a straightforward remedy" for the student's particular factual circumstances. *See* Pl. Mem. at 23–24; SRO Decision at 14–16.

I.      **The SRO's Denial of Reimbursement for**
        **After-School Services Applies the Correct Legal**
        **Standard and is Supported By the Record**

The SRO Decision denied R.F. after-school services using the correct legal standard and after a well-reasoned application of that standard to the facts.  Neither party appeals the SRO determination that DOE failed to offer R.F. a FAPE.  Pl. Mem. at 5, 10, 14; Def. Reply at 2. Accordingly, this Court will not address whether the school district's proposed plan will provide the child with a FAPE, which was answered in the negative. Moreover, neither party appeals the SRO holding that Titus was an appropriate placement for R.F.'s 2023-2024 school year.  Pl. Mem. at 14; Def. Opp. & Mem at 10–11.  Instead, Plaintiffs' argument in favor of funding their chosen after-school services centers on the SRO analysis of the equities, under the third prong of the *Burlington/Carter* test and asserts that the SRO (a) applied erroneous legal standards and (b) misapplied the law to the facts before it.  Pl. Mem. at 15–23.[12]  The Court disagrees.

A.      *The SRO Decision Applied the Correct Legal*
        *Standards for Assessing the Equities*

Plaintiffs do not dispute that the SRO Decision properly analyzed as an equitable consideration the question of whether to reimburse Plaintiffs for their chosen after-school services, in addition to the Titus School tuition.  *See* Pl. Mem. at 14–16; SRO Decision at 9; *see, e.g.*, *A.P.*, 2024 WL 763386, at *2 ("The first two prongs of the test generally constitute a binary inquiry that determines whether or not relief is warranted, while the third enables a court to determine the

---

[12] DOE does not dispute that at the IHO hearing it conceded that there were no equitable considerations against the "full relief requested by plaintiffs" nor that, after the hearing, it confirmed that it conceded the third prong of the *Burlington/Carter* test.  Def. Rp. 56.1 ¶¶ 39, 55.  Nevertheless, DOE asks the Court to uphold the SRO Decision which held that, based on equitable considerations, Plaintiffs here are not entitled to reimbursement for their chosen after-school services.  Def. Opp. & Mem. at 1; SRO Decision at 8–14.  This contradictory stance may have been caused by a misunderstanding of the SRO Decision.  Indeed, the first and second prong analyses appear to overlap considerably when determining a reasonable level of reimbursement to parents. *See infra*; SRO Decision at 9, 11–12.  Regardless, "the concession of a point on appeal by [a party] is by no means dispositive of a legal issue" and a court is "not required to accept such a concession when the law and record do not justify it."  *D.S. By & Through M.S. v. Trumbull Bd. of Educ.*, 975 F.3d 152, 162 (2d Cir. 2020) (quoting *Roberts v. Galen of Va., Inc.*, 525 U.S. 249, 253 (1999) and quoting *United States v. Linville*, 228 F.3d 1330, 1331 n.2 (11th Cir. 2000)).  That is the case here.

appropriate amount of reimbursement, if any."); *L.K. v. N.Y.C. Dep't of Educ.*, 674 F. App'x 100, 101 (2d Cir. 2017) (summary order) (analyzing whether after-school services should be reimbursed under the third prong).

Instead, Plaintiffs argue that the SRO Decision sets out the incorrect law for the equities analysis. Pl. Mem. at 11, 15–16, 22–23. Since this is an issue of law relating to the IDEA statute, which does not concern "specialized knowledge" on educational policy, the Court "owe[s] no deference to state hearing officers." *C.S.*, 990 F.3d at 165. Nevertheless, the Court concludes that the SRO Decision articulated and applied the correct standards. Contrary to the Plaintiffs arguments, the SRO Decision (1) set out the proper factors relevant to the equities analysis, including whether reimbursement of all of Plaintiffs' costs was appropriate and reasonable, (2) properly held that a FAPE does not require services aimed at generalizing skills to settings outside of school where the student is otherwise likely to make progress in the classroom, and (3) used the correct "appropriate progress" standard, rather than the "some benefit" or "more than *de minimis*" standard when determining if reimbursement for after-school services was appropriate and reasonable.

First, Plaintiffs assert the SRO should have analyzed "primarily . . . parent cooperation and good faith in the IEP development process." Pl. Mem. at 15. Thus, Plaintiffs argue that "where, as here, parents cooperated with the district, 'participated at . . . [the] CSE meeting,' 'visited proposed placements,' and gave the district timely notice before enrolling the child in the private program, [the third *Burlington/Carter* prong] is satisfied." *See id.* (quoting *Mr. & Mrs. A., ex rel D.A. v. N.Y.C. Dep't of Educ.*, 769 F. Supp. 2d 403, 419 (S.D.N.Y. 2011)). This conclusion fails to acknowledge Supreme Court case law, which the SRO Decision cites and applies, that holds courts "must consider all relevant [equities] factors, including the appropriate and reasonable level of reimbursement that should be required" and explains that "[t]otal reimbursement will not be

13

appropriate if the court determines that the cost of the private education was unreasonable." *See* SRO Decision at 9 (quoting *Carter*, 510 U.S. at 16 and citing *E.M. v. N.Y.C. Dep't of Educ.*, 758 F.3d 442, 461 (2d Cir. 2014)) (holding that courts may "reduce the amount of a reimbursement award if the equities so warrant")). As one district court explained, "if reimbursement hinged *only* on equitable factors relating to parental conduct, the Parents might prevail. But *Carter* forecloses that possibility by instructing courts to deny total reimbursement in the face of unreasonable cost." *L.K. v. N.Y.C. Dep't of Educ.*, No. 14-CV-7971 (AJN), 2016 WL 899321, at *8 (S.D.N.Y. Mar. 1, 2016), *aff'd in part, remanded in part*, 674 F. App'x 100 (2d Cir. 2017).

Indeed, the SRO Decision noted that when considering this factor, a court may reduce the reimbursement awarded to Plaintiffs for any "segregable cost" that the Plaintiffs' chosen private institution provided over and above the level required to provide a FAPE the student. SRO Decision at 9 (citing *L.K.*, 2016 WL 899321, at *8); *see also A.P. v. N.Y.C. Dep't of Educ.*, No. 21 CIV. 7439 (LGS), 2025 WL 1466844, at *3 (S.D.N.Y. May 22, 2025) (remanding to the IHO because "the administrative decisions did not consider the reasonableness of tuition" or "any unnecessary expenses" one of the factors relevant to the equities inquiry); *V.A. v. N.Y.C*, No. 20-CV-0989 (EK)(RML), 2022 WL 1469394, at *13 (E.D.N.Y. May 10, 2022) (same). The Second Circuit has held that a reasonable level of reimbursement under the equities analysis should "bear[] a relationship" to the level of services that the DOE would have been required to provide for a FAPE. *L.K.*, 674 F. App'x at 101 (summary order) (quoting *Still v. DeBuono*, 101 F.3d 888, 893 (2d Cir. 1996)). Accordingly, the SRO Decision correctly outlined the factors relevant to the equities analysis.

Second, Plaintiffs take issue with the SRO Decision's formulation of the law, specifically the conclusion that districts are not required "as a matter of course, to design educational programs to address a student's difficulties in generalizing skills to other settings outside of the school

environment, particularly where it is determined that the student is otherwise likely to make progress, at least in the classroom setting." *See* SRO Decision at 11. The SRO Decision uses this standard to determine that here, the reimbursement for Plaintiffs' chosen after-school services were over and above the "appropriate and reasonable level of reimbursement" required by the IDEA, one of the relevant equities factors. *See id.* at 9, 11–14.

The SRO Decision is well-reasons and correctly applies governing law. The SRO correctly cited numerous SDNY cases supporting his statement of the law on generalizing skills. *See id.* at 11 (citing *F.L. v. N.Y.C. Dep't of Educ.*, No. 15-CV-520 (KBF), 2016 WL 3211969, at *11 (S.D.N.Y. June 8, 2016)*; L.K.*, 2016 WL 899321, at *8 (citation omitted) (holding "services that seek only to generalize skills may not be required to provide a FAPE" instead, "a school district must formulate an IEP that is 'reasonably calculated to . . . produce progress, not regression' . . . more than just 'the opportunity for only trivial advancement.'"); *P.S. v. N.Y.C. Dep't of Educ.*, No. 13 CIV. 04772 LGS, 2014 WL 3673603, at *13–14 (S.D.N.Y. July 24, 2014) (home-based services not required where "[t]he SRO correctly noted the testimony of several witnesses that the purpose of home-based services was to 'generalize' conduct learned at school, as opposed to providing an additional tool or management skill."); *M.L. v. N.Y.C. Dep't of Educ.*, 2014 WL 1301957, at *11 (S.D.N.Y. Mar. 31, 2014); *K.L. v. N.Y.C. Dep't of Educ.*, 2012 WL 4017822, at *14 (S.D.N.Y. Aug. 23, 2012), *aff'd*, 530 Fed. App'x 81 (2d Cir. July 24, 2013) (same generalization standard applied to parent counseling); *Student X v. N.Y.C. Dep't of Educ.*, No. 07-CV-2316 (NGG), 2008 WL 4890440, at *17 (E.D.N.Y. Oct. 30, 2008); *A.O. v. N.Y.C. Dep't of Educ.*, 2008 WL 8993558, at *7 (S.D.N.Y. Apr. 21, 2008)). There is, in addition, a more recent case holding the same. *See C.M. v. Mount Vernon City Sch. Dist.*, No. 18 CV 4409 (VB), 2020 WL 3833426, at *21 (S.D.N.Y. July 8, 2020) (holding that courts have found "services that seek only to generalize skills may not be required to provide a FAPE").

Plaintiffs point out that one of the cited cases, *L.K.*, "did not apply, or advocate for, a blanket rule barring generalization as a basis for a student's programming."  Pl. Mem. at 22 (citing *L.K.*, 2016 WL 899321, at *8–*10).  Instead, Plaintiffs argue, *L.K.* applied a "nuanced approached in determining whether generalization, at times, is needed for a student to receive an educational benefit."  *Id.*  Plaintiffs allege further, that the SRO failed to grapple with Second Circuit authority in which the Court acknowledged that the severity of a student's disability may justify the need for supplemental, after-school services delivered in the home and surrounding community.  Pl. Mem. at 9 (citing *L.K.*, 674 F. App'x 100).

While Plaintiff is correct with regard to the *L.K.* decision, that case is not in conflict with SRO's explanation or application of the law. The SRO Decision cites to both the District Court and Second Circuit opinions issued in the case cited by Plaintiffs.  *See* SRO Decision at 9, 11, 13. Further, the SRO did not state or apply a "blanket rule" prohibiting funding for after-school services or instruction that generalized skills.  Instead, it held that the IDEA does not require after-school services aimed at generalization particularly "where it is determined that the student is otherwise likely to make progress."  SRO Decision at 11.  The SRO found the record sufficient to support the IHO finding that the after-school services here "were not necessary in order for the student to make meaningful educational progress" and thus were "provided in excess of a FAPE" and need not be reimbursed.  SRO Decision at 13–14 (quoting *L.K.*, 674 Fed. App'x at 101). Moreover, the SRO Decision did not hold that under no circumstances could after-school services be reasonable and appropriate but instead found, as explained further below, that each of the after-school services provided to R.F. for which Plaintiffs seek reimbursement were in excess of a FAPE.  Further, Plaintiffs failed to demonstrate on appeal how the facts of *L.K.* were analogous to this case such that the cost of some of the chosen after-school services or services aimed at generalizing skills should be reimbursed.

16

Plaintiffs further argue that two of the cases the SRO Decision cited for the "generalization" standard used an outdated "some benefit" standard in determining whether services aimed at generalization were owed to a student under the IDEA. Pl. Mem. at 1, 9, 23 (citing *L.K.*, 2016 WL 899321 at *8–10 and citing *Thompson R2-J Sch. Dist. v. Luke P., ex rel. Jeff P.*, 540 F.3d 1143, 1152 (10th Cir. 2008)). Plaintiffs argue that in *Endrew*, the Supreme Court held that to determine whether a FAPE was provided to a student, courts could no longer find that a student had been provided merely "some benefit" or a benefit that was "more than de minimis." *Id.* at 22–23 (citing *Endrew F. v. Douglas County Sch. Dist. RE-1*, 580 U.S. 386, 388 (2017)). Plaintiffs urge that *Endrew* now requires a court analyzing whether a FAPE was provided, to determine whether a student's academic program and goals are "appropriately ambitious in light of [their] circumstances." *Id.* (quoting *Endrew*, 580 U.S. at 388).

Plaintiffs accurately state the holding in *Endrew. See* 580 U.S. at 397. However, the Second Circuit specifically held that "*Endrew* does not signal a change in the law of this Circuit" and "prior decisions of this Court are consistent with the Supreme Court's decision in *Endrew F*" because even prior to *Endrew*, the Second Circuit required school districts to provide students with the opportunity for "meaningful . . . progress." *Doe v. E. Lyme Bd. of Educ.*, 962 F.3d 649, 663–64 (2d Cir. 2020) (quoting *Mr. P. v. W. Hartford Bd. of Educ.*, 885 F.3d 735, 757 n.12 (2d Cir. 2018) and quoting *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 194–95 (2d Cir. 2005)); *see also Killoran v. Westhampton Beach UFSD*, No. 21-2647, 2023 WL 4503151, at *3 (2d Cir. July 13, 2023) (quoting *Endrew*, 580 U.S. at 402) (analyzing whether a child's IEP was "appropriately ambitious in light of his circumstances"); *Phillips v. Banks*, No. 23-362, 2024 WL 1208954, at *3 (2d Cir. Mar. 21, 2024) (quoting *Endrew*, 580 U.S. at 402) (deferring to the SRO's conclusion that IEP goals were "appropriately ambitious in light of [the student's] circumstances."). Accordingly, the numerous SDNY cases cited in the SRO decision regarding generalization—including at least

one of the two cases Plaintiffs assert used the "some benefit" standard—were consistent with the standard set out in *Endrew*. *See* SRO at 11 (collecting cases); *L.K.*, 2016 WL 899321, at *10 (affirming an SRO Decision finding a student did not need all chosen after-school services "to make the level of educational progress required by the IDEA"); *C.M.*, 2020 WL 3833426, at *15, *21 (citing *Endrew* for the "progress appropriate in light of the child's circumstances" standard and holding that "services that seek only to generalize skills may not be required to provide a FAPE").

More importantly, the SRO Decision itself does not cite or apply a "some benefit" or "more than de minimis" standard moreover, the SRO Decision also specifically cites to *Endrew* for the proposition that "the IDEA 'requires an educational program reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances.' " SRO Decision at 5 (citing *Endrew*, 580 U.S. at 403). Applying this standard, the SRO Decision then draws conclusions regarding R.F.'s after-school services based on whether they were necessary for R.F. to make progress at school. *See* SRO Decision at 8 ("The IHO found that the parents did not present any testimony or documentary evidence showing . . .  to what extent the [after-school services] were responsible for the student's progress at Titus"); 10 (noting that the IHO determined "after-school services were in excess of a FAPE and were not required for the student to make meaningful educational progress."); 13–14 ("the IHO determined that the after-school services were not necessary in order for the student to make meaningful educational progress . . . [and] the hearing record includes sufficient evidence to support the IHO's findings."). Accordingly, the Court will not reverse the SRO Decision based on an improper articulation or application of the law.

**B.      *The SRO Decision Reasonably Applied the Legal Standard to R.F.'s Circumstances***

In a thoroughly-reasoned decision with extensive record citations, the SRO upheld the IHO's finding that R.F.'s after-school services were aimed at maximization[13] and generalization, thus not necessary to "meaningful educational progress" and as such, not reimbursable.  *See* SRO at 11–14.  Courts must afford substantial deference to this well-reasoned SRO holding which concerns "matters of educational policy."  *See Wasser v. New York State Off. of Vocational & Educ. Servs. for Individuals With Disabilities*, 602 F.3d 476, 479 (2d Cir. 2010); *see also Hardison*, 773 F.3d at 386.

The SRO's findings are supported by a preponderance of the evidence.  The SRO detailed evidence in the record demonstrating the services provided in-school by Titus.  SRO Decision at 12.  The SRO noted correctly that R.F. was placed in a class in Titus that consisted of "seven other students, one lead teacher, one lead behavior therapist, three behavior therapists and one BCBA classroom supervisor."  SRO Decision at 12 (internal quotation marks omitted) (citing Ex. P–O at 1).  It further noted that the Titus founder testified that the school offered and encouraged parents of students to attend at least two sessions per month of support or training to learn about how to implement Titus's approaches at home and testified that Titus's teachers worked with parents collaboratively "to ensure consistency and facilitate generalization of skills"  *Id.* (citing Ex. P–U ¶¶ 15, 16).

---

[13] As explained by the SRO Decision, school districts are not required to " 'maximize' the potential of students with disabilities." *See* SRO Decision at 5, 11 (citing *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 199 (1982) and citing *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 379 (2d Cir. 2003) and citing *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 132 (2d Cir. 1998) and (citing *L.K.*, 2016 WL 899321, at *8, *aff'd in part, remanded in part on other grounds*, 674 F. App'x 100 (2d Cir. 2017) (citation omitted) (holding "school districts are not required to 'maximize the potential' of students with disabilities")).   Plaintiffs do not dispute this, but argue that SRO erred in his application of the rule by determining that R.F.'s after-school services were aimed at maximization of R.F.'s potential.  *See* Pl. Mem. at 20; Pl. Reply at 1, 2.

The SRO Decision found sufficient evidence in the record to support the finding that each of R.F.'s afterschool services—ABA, SLT, and OT—were aimed at maximizing and generalizing skills, though some of the providers of these services testified that the services they provided were necessary to his education. SRO Decision at 13 (citing Ex. P–V ¶¶ 22, 24; Tr. 70, 80). Indeed, the SRO Decision specifically noted testimony from each of the after-school providers that the services were aimed at maximization and generalization and the providers did not testify at the IHO hearing that the after-school services differed from the services provided to R.F. at Titus. *See* SRO Decision (citing Ex. P–V at ¶ 23 (the ABA provider testified that after-school ABA services focused on "independence, adaptive living skills, psychological flexibilit[]y, adaptation to various environments and settings, and generalization and practical application of [the student's] skills in all settings") and citing Tr. 103–05, 116, 147–48; Ex. P–U ¶ 42 (the after-school ABA provider testified that she was working on a showering program with the student at-home, which Titus was not working on with R.F.; however, the founder of Titus testified that the student was in fact working toward showering at Titus) and citing Tr. 58 (the speech therapist testified that in her sessions she addressed the same skills R.F. was working on at Titus) and citing Tr. 64 (the after-school speech-language pathologist testified that the therapy she provided was intended to "maximize [the student's] speech and language") and citing Ex. P–S at 3 (the after-school OT report indicated that skills were "beginning to be addressed in OT sessions to carry over to the home environment" and that direct parent education and training was provided during sessions) and citing Tr. 80–81 (the occupational therapist testified she did not believe there were enough OT services at school for the student; however, she also testified that she was not aware of how often the student received OT at Titus)).

Plaintiffs argue the SRO Decision "failed to consider and appreciate the fact that nothing in the record established that R.F. was likely to make progress at Titus without his afterschool

services." *See* Pl. Mem. at 22.  However, the SRO Decision, as described above, did thoroughly review the record regarding the services and education provided to R.F. during school hours.  *See* SRO Decision at 12.  Moreover, while SRO Krolak did acknowledge that "it is difficult to parse out whether the program at Titus met the student's needs in the absence of the after-school services because the after-school services were running simultaneously with the student's programming at Titus," he nevertheless concluded after a thorough review that "the hearing record includes sufficient evidence to support the IHO's findings."  *See* SRO Decision at 13–14.

Plaintiffs further assert that the SRO failed to consider and give proper weight to evidence that showed R.F.'s need for after-school services and the progress he has made and continues to make from such services.  Pl. Mem. at 9 (citing Exs. P–D, P–E, P–M, P–O); *see also* Pl. Reply & Opp. at 3–4.  While the IHO Decision discounted these exhibits as outdated, as noted *supra* n.3, the SRO Decision affirmed that Exhibits P–D, P–M, P–O and several others, were "included in the hearing record and [that] they have been reviewed on appeal."  *See* SRO Decision at 9 n.6. The SRO Decision separately cited to evidence drawn from Exhibit P–E.  *See* SRO Decision at 12. These exhibits were cited several times in the SRO Decision. *See* SRO Decision at 9, 10, 12, 14. Even after considering these exhibits, SRO Krolak reached the conclusion that after-school services were not necessary to provide R.F. with the opportunity for "meaningful educational progress" and therefore not necessary to reimburse.  SRO at 13–14.

Upon the Court's independent review and with due deference to the SRO, the Court does not find a sufficient reason to reverse the holding in the SRO Decision.  Indeed, several of the exhibits that Plaintiffs argue were not adequately considered illustrate the numerous and thoroughly considered strategies and services provided to R.F. during school hours that were specifically designed for his particular challenges and show how Titus carefully tracked his

progress toward skills actively pursued in school during the prior 2022 to 2023 school year.  *See* Exs. P–D, P–M.

## II.     The SRO Denial of Funding for a Neuropsychological Evaluation and Report Must be Affirmed

Plaintiffs also argue that the SRO Decision erred in denying them funding for an updated neuropsychological evaluation because "the SRO failed to appreciate and grapple with the facts of this [c]ase." *See* Pl. Mem. at 23–24.  Plaintiffs further urge that "controlling law does not provide a straightforward remedy" for the student's particular factual circumstances.  *See* Pl. Mem. at 24; SRO Decision at 14–16.  The Court does not agree.

A student's IEP, or individualized education program, is typically based largely on the results of statutorily mandated evaluations of the child conducted by the school district every three years.  *See D.S. By & Through M.S.*, 975 F.3d at 157 (citing 20 U.S.C. §§ 1414(b)(2)(A)(ii), (c)(1)–(2), (d)(3)(A), (d)(4)(A), 1414(a)(2), (d)(4)(a)); s*ee also M.M. v. N.Y.C. Dep't of Educ.*, 655 F. App'x 868, 871 (2d Cir. 2016) (summary order) ("[T]he applicable statutory provision does mandate the DOE to conduct a triennial reevaluation of a student at least every three years.").  When a parent disagrees with one of those triennial evaluations, the parent may be entitled to a publicly funded Independent Educational Evaluation ("IEE").  *D.S.*, 975 at 157–58 (citing 34 C.F.R. § 300.502(b)(1)).  An IEE is defined as "an evaluation conducted by a qualified examiner who is not employed by the public agency responsible for the education of the child in question." *Id.* at 158 (citing 34 C.F.R. § 300.502(a)(3)(i)).  Parents may pay for an IEE whenever they choose and are able, but there is "a limited circumstance in which a parent may seek an IEE at public expense." *Id.* at 158.  Generally, the student's parent may only seek funding for an IEE at public expense if he or she disagrees with the district's evaluation notifies the district of the disagreement within three years, before the district conducts the next triennial evaluation.  *Id.* at 170.

In denying the Plaintiffs' request for public funding of an updated neuropsychological exam, SRO Krolak found that Plaintiffs' request for a publicly funded IEE was procedurally improper because Plaintiffs made the request for the first time in their amended due process complaint. *See* SRO Decision at 14–15. The SRO Decision explained that though some SROs have permitted parents to request a district-funded IEE in a due process complaint in the first instance, several SROs have found that instead parents were required to disagree with a district evaluation first, prior to including a request for a publicly funded IEE in a due process complaint. *See* Def. Rp. 56.1 ¶ 63; SRO Decision at 15. The SRO Decision followed the lead of the more recent SRO Decisions.

This ruling aligns with the process required by statute. As the SRO Decision explained, after a parent disagrees with an evaluation and requests an IEE at public expense, the district must "without unnecessary delay" either grant the IEE at public expense or initiate a due process proceeding itself to defend its own evaluation of the student. SRO Decision at 15 (citing 34 C.F.R. § 300.502(b)(2)); *see also D.S.*, 975 F.3d at 157 (citing same). The requirement to file a due process complaint on the part of the district would not make sense if the statute anticipated parents making their disagreements with triennial evaluations known in the first instance in their own due process complaint. SRO Krolak held that Plaintiffs approach here did not afford the DOE an opportunity to "engage with the parent on the request for an IEE at public expense outside of due process litigation" as contemplated by the statute. SRO Decision at 15. The Court sees no reason to disagree with SRO Krolak's statutory analysis.

On appeal, Plaintiffs argue that the SRO failed to acknowledge that the district did not conduct any triennial evaluation as statutorily mandated. Pl. Mem. at 22 (citing Ex. P–A); Pl. Reply at 5 (citing Exs. P–A and P–B). Plaintiffs argue that because of the district's failure, they did not have the opportunity to disagree with any evaluation before requesting funding for an IEE

in a due process complaint. *Id.* They assert that "the controlling law does not provide a straightforward remedy for when the DOE fails to evaluate a student altogether" and thus this Court should award them public funding for their own neuropsychological evaluation. *Id.*

Indeed, there is no district-conducted neuropsychological evaluation in the administrative record. Defendant asserts that R.F.'S last required triennial neuropsychological evaluation "appears to have occurred in 2021." Def. Mem. at 9 (citing Ex. P - D). But as Plaintiffs correctly point out, the 2021 neuropsychological evaluation in the record was clearly conducted by Titus School, not by the district. Pl. Reply & Opp. at 5 (citing Ex. P – D). Defendant does not respond to this point. *See* Def. Reply at 3–4. Nevertheless, beyond Plaintiffs assertions in both the original and amended due process complaints that "[t]he DOE failed to conduct a triennial evaluation," *see* P–A ¶ 27, P–B ¶ 27, no part of the record, no testimony from the IHO hearing, no finding from either administrative decision, and no facts asserted in the parties' 56.1 statements indicate that the relevant district failed to conduct the statutorily mandated triennial evaluations.

If Plaintiffs are correct, as seems to be the case, that the district failed to provide a statutorily required triennial evaluation, the law in these factual circumstances is more straightforward than Plaintiffs suggest, and operates to prohibit Plaintiff from receiving public funding. The case law suggests that seeking funding for Plaintiffs' own exam is not the proper remedy when the government fails to do the required triennial exam. Instead, Plaintiffs should have requested an exam from the district, and if the district failed to respond by conducting an exam, then Plaintiffs could have argued in the following administrative proceedings that the district's failure to conduct an exam indicates that the district did not provide their child a FAPE.

Courts regularly analyze whether a district's failure to provide a triennial evaluation means that the district failed to provide a FAPE or rendered the relevant IEP inadequate, issues which the IHO Decision and SRO Decision have already resolved and neither party has appealed. *See, e.g.*,

*M.M.*, 655 F. App'x at 871 (summary order) (holding that the DOE's failure to conduct a triennial reevaluation "in this case did not render the IEP inappropriate."); *Timothy O. v. Paso Robles Unified Sch. Dist.*, 822 F.3d 1105, 1127 (9th Cir. 2016) (finding failure to conduct the triennial evaluation "denied Luke a free appropriate public education during the 2009–2010 and 2010–2011 school years."); *A.A. v. N.Y.C. Dep't of Educ.*, No. 14 CIV. 8483 (ALC), 2015 WL 10793404, at *11 (S.D.N.Y. Aug. 24, 2015) (finding failure to conduct the triennial evaluation did not result in the denial of a FAPE because Plaintiffs had not shown that the failure "significantly impeded the parents' opportunity to participate in the decisionmaking process, or caused a deprivation of educational benefits."); *Scott ex rel. C.S. v. N.Y.C. Dep't of Educ.*, 6 F. Supp. 3d 424, 438 (S.D.N.Y. 2014) (finding "that the DOE's failure to conduct a [triennial evaluation] did not render the IEP legally inadequate."); *D.B. v. N.Y. City Dep't of Educ.*, 966 F.Supp.2d 315, 330–31 (S.D.N.Y.2013) (holding that the DOE's failure to conduct the statutorily-mandated triennial reevaluation of the student did not render the IEP procedurally defective). While there are numerous cases address Plaintiffs' factual circumstances and find the lack of a FAPE, Plaintiffs have not pointed to, and the Court has not found, any case awarding public funding for an IEE because the DOE failed to conduct a triennial evaluation.

Indeed, when determining whether a parent has a right to an IEE at public expense, courts first evaluate whether there was a disputed district evaluation that "trigger[ed]" a right to an IEE at public expense. *See, e.g.*, *D.S.*, 975 F.3d at 161–62, 168, 171. In *D.S.*, the Second Circuit held that "a parent's right to an IEE at public expense is triggered when the parent 'disagrees with an *evaluation* obtained by the public agency.'" *Id.* at 163 (emphasis in the original) (quoting 20 U.S.C. § 300.502(b)(1)). The Second Circuit went on to find that the functional behavioral assessment ("FBA") that plaintiff-appellants disagreed with was not an "evaluation" as defined by the IDEA. *See id.* at 156, 164. Thus, the Second Circuit held that there was no evaluation with

which the plaintiff-appellants' disagreed and they had no right to an IEE at public expense. *See id.* 164–65. Accordingly, if Plaintiffs are correct that no triennial evaluation was conducted, there was no trigger entitling Plaintiffs to a publicly funded IEE. Accordingly, the Court declines to reverse the SRO Decision on this point as well.

### III. Plaintiffs are a Substantially Prevailing Party

Plaintiffs argue that "in view of the IHO's award of R.F.'s tuition at the not-for-profit Titus," this Court should find that Plaintiffs are the "prevailing party" and thus have standing to seek attorneys' fees and costs pursuant to 20 U.S.C. § 1415(i)(3)(B). *See* Pl. Mem. at 3. Pursuant to the IDEA, "[i]n any action or proceeding brought under this section" a Court "may award reasonable attorneys' fees as part of the costs. . . to a prevailing party." *See* 20 U.S.C. § 1415(i)(3)(B)(i)(I). The Second Circuit has specified that an "action or proceeding" includes both administrative hearings and litigation before federal courts. *See G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 423 (S.D.N.Y. 2012) (citing *A.R. ex rel. R.V. v. N.Y.C. Dep't of Educ.* 407 F.3d 65, 75 (2d Cir.2005)).

The prevailing party standard has been "interpreted generously" by the Supreme Court and the Second Circuit, and thus a party "need not prevail on all issues" to be granted an award of attorneys' fees. *See id.* at 424 (quoting *B.W. ex rel. K.S. v. N.Y.C. Dep't of Educ.,* 716 F.Supp.2d 336, 345 (S.D.N.Y.2010) (collecting cases). Instead, parties may be prevailing "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Poppington, LLC v. Brooks*, No. 23-660, 2024 WL 1266983, at *2 (2d Cir. Mar. 26, 2024). Here, Plaintiffs prevailed at least at the IHO level as to the significant issues that R.F. was denied a FAPE, his placement at Titus was appropriate, and thus he was entitled to reimbursement for Titus School tuition in the amount of $132,000 for the academic year 2023 to 2024. *See* Def. Rp. 56.1 ¶ 58; IHO Decision at 13–16, 21; SRO Decision at 3, 10. Defendants did

not appeal this decision to the SRO, thereby conceding Plaintiffs were correct about the lack of FAPE provided to R.F. and their entitlement to reimbursement for Titus tuition. *See* Def. Rp. 56.1 ¶ 61; SRO Decision at 4; Pl. Mem. at 2–3. Moreover, Defendant does not address or make any arguments against Plaintiff's request for a finding that it is a prevailing party. *See* Def. Opp & Mem; Def. Reply. Accordingly, the Court finds that Plaintiffs have standing to seek reasonable attorneys' fees and costs pursuant to 20 U.S.C. § 1415(i)(3)(B).

## <u>CONCLUSION</u>

The Court is deeply sympathetic to the parents and their admirable concern for the welfare of their child. It cannot, however, find a basis for providing the remedies sought in the instant litigation.

For the foregoing reasons, Plaintiffs motion for summary judgment seeking reversal of a portion of the SRO Decision is DENIED and Defendants' cross-motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED that that Plaintiffs have standing to seek reasonable attorneys' fees and costs pursuant to 20 U.S.C. § 1415(i)(3)(B). By October 8, 2025, Plaintiffs shall file a particularized request for reasonable attorneys' fees and costs, together with supporting documentation that complies with 20 U.S.C. § 1415(i)(3). By October 17, 2025, Defendant shall file any objections thereto, after which the Court will render a final judgment.

The Clerk of Court is directed to terminate the motions at ECF Nos. 19 and 26.

**SO ORDERED.**

Date: **September 22, 2025**　　　　　　**MARY KAY VYSKOCIL**
**New York, NY**　　　　　　　　　　　**United States District Judge**